WESTCHESTER BUILDING COMPANY, LLC,

Landlord,

AMERIQUEST MORTGAGE COMPANY

Tenant.

## LEASE

Premises:   Entire Ground, 1st and 2nd floors
North Building
333 Westchester Avenue
White Plains, New York

TABLE OF CONTENTS

PAGE

ARTICLE

| | | |
|---|---|---|
| 1. | Premises; Term | 1 |
| 2. | Commencement of Term | 2 |
| 3. | Rent | 3 |
| 4. | Use | 4 |
| 5. | Alterations, Fixtures | 5 |
| 6. | Repairs | 8 |
| 7. | Floor Load; Noise | 9 |
| 8. | Laws, Ordinances, Requirements of Public Authorities | 10 |
| 9. | Insurance | 12 |
| 10. | Damage by Fire or Other Cause | 14 |
| 11. | Assignment, Subletting, Mortgaging | 15 |
| 12. | Liability of Landlord and Indemnity by Tenant | 22 |
| 13. | Moving of Heavy Equipment | 25 |
| 14. | Condemnation | 25 |
| 15. | Entry, Right to Change Public Portions of the Building Project or the North Building | 27 |
| 16. | Conditional Limitations, Etc. | 28 |
| 17. | Mechanic's Liens | 33 |
| 18. | Landlord's and Tenant's Right to Perform Obligations | 34 |
| 19. | Covenant of Quiet Enjoyment | 34 |
| 20. | Excavation | 34 |
| 21. | Services and Equipment | 35 |
| 22. | Escalation | 39 |
| 23. | Common Areas | 51 |
| 24. | Electric Inclusion | 53 |
| 25. | Broker | 56 |
| 26. | Subordination | 56 |
| 27. | Estoppel Certificate | 58 |
| 28. | Waiver of Jury Trial | 59 |
| 29. | Surrender of Premises | 59 |
| 30. | Rules and Regulations | 60 |
| 31. | Successors and Assigns and Definitions | 60 |
| 32. | Notices | 61 |
| 33. | No Waiver; Entire Agreement | 62 |
| 34. | Captions | 64 |
| 35. | Inability to Perform | 64 |
| 36. | No Representations by Landlord | 64 |
| 37. | Supplemental Air Conditioning | 65 |
| 38. | Rent Control | 65 |

i

INDENTURE OF LEASE made this 18th day of February, 2003, between WESTCHESTER BUILDING COMPANY, LLC a New York limited liability company, having an office at 750 Lexington Avenue, New York, New York 10022 ("Landlord") and AMERIQUEST MORTGAGE COMPANY, a Delaware corporation having an office at 1100 Town & Country Road, Suite 410, Orange, California 92868 ("Tenant").

## W I T N E S S E T H:

## ARTICLE 1

## Premises; Term

Landlord hereby leases to Tenant and Tenant hereby hires from Landlord the entire ground, 1st and 2nd floors (collectively the "Demised Premises") as shown crosshatched on the floor plan (Schedule A) attached hereto, in the North office building (the "North Building"), located in the "Building Project" (as hereinafter defined) comprised of the South Building, North Building, East Building, West Building and Fitness Building (collectively called the "Buildings") located on the Land more particularly described on Schedule C attached hereto, together with the use in common with others of the "Common Areas" (as hereinafter defined), all of said Buildings, Land and Common Areas being hereinafter collectively called the "Building Project", and known as and by the street number 333 Westchester Avenue, in the City of White Plains, State of New York, upon and subject to the terms, covenants and conditions hereafter set forth.  Landlord and Tenant agree that the rentable square feet of the Demised Premises is deemed to be approximately 118,000 and the rentable square feet of the office space in the Building Project is deemed to be approximately 545,591.  Tenant and Landlord covenant and agree, whether by remeasurement or any other action, not to dispute or in any manner contest the agreed upon approximation of the rentable square feet set forth above.  Notwithstanding any contest or dispute by Tenant or Landlord of the amount of such rentable square feet, the amount of the minimum rent expressly provided in Section 3.01 shall not be changed, modified or amended in any manner.

TO HAVE AND TO HOLD the Demised Premises unto Tenant for a term commencing on the date that the Base Building Work (defined below) has been substantially completed in accordance with Section 2.01 below and Schedule "B" attached hereto (the Commencement Date"), and ending on a date (the "Expiration Date") which shall be six (6) years and six (6) months after the Commencement Date, plus the number of days required, if any, to have such term expire on the last day of a calendar month, or on such earlier date upon which said term may expire or terminate pursuant to the conditions of this Lease or pursuant to law.  As the Lessee under the Ground Lease (as defined in Article 26), Landlord agrees (i) to keep the Ground Lease in force throughout the term of this Lease insofar as it includes the Building Project, and/or (ii) pursuant to the provisions of the Ground Lease, to acquire fee title to the Building Project, so that in either

case Tenant's rights under this Lease (including without any limitation its Renewal Options under Article 41) shall not be affected.

IT IS MUTUALLY COVENANTED AND AGREED between Landlord and Tenant as follows:

## ARTICLE 2

### Commencement of Term

Section 2.01.     Landlord shall deliver possession of the Demised Premises to Tenant on the date that the Base Building Work in the Demised Premises has been substantially completed by Landlord in accordance with Schedule "B". Landlord shall use its best efforts to substantially complete the Base Building Work within sixty (60) days from the date hereof, (subject to delays described in paragraph 3 of Schedule "B"), provided Landlord shall have no liability or responsibility to Tenant if the Base Building Work has not been substantially completed within said sixty (60) day period despite Landlord's best efforts to do so. Except as set forth on Schedule B, Landlord shall have no obligation to perform any other work in connection with the preparing of the Demised Premises for Tenant's occupancy. The Base Building Work shall be deemed substantially completed on the date on which Landlord gives Tenant written notice that the Base Building Work has been completed in accordance with the working drawings therefor, even though minor details or adjustments which shall not materially interfere with Tenant's use of the Demised Premises may not then have been completed, but which Landlord agrees will thereafter be completed promptly.

Section 2.02.     Tenant has fully inspected the Demised Premises, is familiar with the condition thereof and agrees to accept possession of the same on the Commencement Date in their present "As Is" condition, except for Landlord's Base Building Work as set forth in Schedule "B" and Landlord's representations, warranties, and covenants set forth in this Lease.

Section 2.03.     Promptly after the Commencement Date, Landlord and Tenant will execute a statement in recordable form confirming the Commencement and Expiration Dates of this Lease, in accordance with the foregoing provisions.

2

ARTICLE 3

Rent

Section 3.01.     Tenant shall pay as rent for the Demised Premises as follows:

(a)     a fixed minimum rent (the "minimum rent") at the annual rate of $2,714,000.00 per annum (or $226,166.67 per month), provided if the Commencement Date is other than the first day of the month, then the minimum rent for such month shall be prorated based on the number of days in such calendar month; and

(b)     all other sums and charges required to be paid by Tenant under the terms of this Lease (including without limitation, the payments required to be made under Article 22), which shall be deemed to be and are sometimes referred to hereafter as additional rent.

Section 3.02.     Notwithstanding the provisions of Section 3.01 hereof and provided Tenant is not then in default under any of the provisions of this Lease on its part to be performed, Tenant shall be entitled to an abatement of the minimum rent only in the amount of $226,166.67 for each of the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 17th and 18th full months of the term succeeding the Commencement Date. Tenant acknowledges that the consideration for the aforesaid abatement of minimum rent is Tenant's agreement to perform all of the terms, covenants and conditions of this Lease on its part to be performed. Therefore, if Tenant shall default under any of such terms, covenants and conditions of this Lease, Tenant's right to the rent abatement set forth in this Section shall immediately end as of the date on which the applicable cure period for such default expires; provided, however that, if Tenant fully cures any such default after the expiration of the applicable cure period so that its rights hereunder are reinstated, then the abatement rights under this Section shall resume as of the date of that cure. Tenant shall be required to pay additional rent and all other sums from and after the Commencement Date.

Section 3.03.     The minimum rent shall be payable in equal monthly installments in advance on the first day of each and every month during the term of this Lease, except that the amount of $226,166.67 shall be paid upon the execution of this Lease and shall be applied to payment of the minimum rent for the 9th month of the term succeeding the Commencement Date.

Section 3.04.     Tenant shall pay the minimum rent and additional rent in lawful money of the United States which shall be legal tender for the payment of all debts, public and private, at the time of payment. Landlord and Tenant agree that, from and after the Commencement Date, Tenant shall pay all minimum rent, additional rent and

3

other amounts now due or hereafter to become due to Landlord or its agents as provided for in this Lease directly to the following lock-box account:

Westchester Building Company LLC
P.O. Box 41032
Newark, New Jersey 07101-8007

All rent checks shall be made payable to Westchester Building Company LLC.

Section 3.05.      The minimum rent and additional rent shall be payable by Tenant without any set-off, abatement or deduction whatsoever and without notice or demand, except as otherwise expressly provided herein.

## ARTICLE 4

### Use

Section 4.01.      Tenant shall use and occupy the Demised Premises for telemarketing and administrative, executive and general office purposes only.

Section 4.02.      Notwithstanding the provisions of Section 4.01, Tenant shall not use or allow the use of the Demised Premises or any part thereof (1) for the cooking and/or sale of food, except that Tenant may warm foods through a microwave; (2) for storage for sale of any alcoholic beverage in the Demised Premises; (3) for storage for and/or sale of any product or material from the Demised Premises; (4) for manufacturing or printing purposes; (5) for the conduct of a school or training facility or conduct of any business which results in the presence of the general public in the Demised Premises; (6) for the conduct of the business of an employment agency or personnel agency; (7) for the conduct of any public auction, gathering, meeting or exhibition; (8) for occupancy by a foreign, United States, state, municipal or other governmental or quasi-governmental body, agency or department or any authority or other entity which is affiliated therewith or controlled thereby and which has diplomatic or sovereign immunity or the like with respect to a commercial lease; (9) for messenger or delivery service (excluding Tenant's or any subtenant's own employees); (10) as a public stenographer or typist; (11) as a telephone or telegraph agency; (12) as medical offices or laboratory; (13) as a travel agency; (14) as a dating service; (15) as a restaurant; (16) as studios for radio, television or other media; (17) as a night club, discotheque, arcade or like kind establishments; (18) as a public or quasi-public health facility, radiation treatment facility, methadone clinic or other drug related clinic, abortion clinic, or for any practice conducted in or through the format of a clinic; (19) as a pawn shop; (20) as an off-track betting parlor; (21) as a homeless shelter, soup kitchen or similar use; (22) for the sale or display or pornographic products or services; (23) for the use or storage of flammable liquids or chemicals (unless incidental

to a permitted use); (24) as a funeral parlor; (25) for the sale or grooming of pets; or (26) for any form of spiritualist services, such a fortune telling or reading. Furthermore, the Demised Premises shall not be used for any purpose that would, in Landlord's reasonable judgment, tend to materially change the character of the North Building, create unreasonable elevator or floor loads, materially impair or interfere with any of the North Building operations or the proper and economic heating, air-conditioning, cleaning or any other services of the North Building, materially interfere with the use of the other areas of the North Building by any other tenants, or materially impair the exterior of the North Building. Neither Tenant nor any person within Tenant's control shall use, generate, store, treat and/or dispose of any Hazardous Materials (as hereinafter defined) in, on, under or about the Demised Premises in violation of any applicable Hazardous Materials laws.

Section 4.03.    If any license or permit, including a Certificate of Occupancy, is required by any governmental agency or entity with jurisdiction over the North Building or Demised Premises for the proper and lawful conduct of Tenant's business in the Demised Premises, or any part thereof, and if failure to secure such certificate of occupancy, license or permit would in any way materially and adversely affect Landlord, Tenant, at its expense, shall duly procure and thereafter maintain such certificate of occupancy, license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such certificate of occupancy, license or permit. Landlord represents that there is an existing certificate of occupancy for the North Building.

Section 4.04.    Tenant shall not at any time use or occupy, or permit anyone to use or occupy, the Demised Premises, or do or permit anything to be done in the Demised Premises, in violation of the Certificate of Occupancy for the Demised Premises or for the North Building, and will not permit or cause any act to be done or any condition to exist on the Demised Premises which poses an unreasonable risk to the North Building or the occupants thereof unless safeguarded as required by law, or which in law constitutes a nuisance, public or private, or which may make void or voidable any insurance then in force covering the North Building and building equipment.

## ARTICLE 5

### Alterations, Fixtures

Section 5.01.    Tenant, without Landlord's prior consent, which consent shall not be unreasonably withheld or delayed, shall make no structural alterations, installations, additions or improvements in or to the Demised Premises ("work") including, but not limited to, the electrical, plumbing, mechanical and HVAC systems serving the Demised Premises, or any unit or part thereof, railings, mezzanine floors, galleries and the like. However, subject to Landlord's consent which shall not be unreasonably withheld or

5

delayed, Tenant may make non-structural interior work. Notwithstanding the foregoing, Tenant shall not be required to obtain Landlord's consent, but subject to Landlord's approval of contractors, for any work within the Demised Premises which costs less than $10,000.00 so long as such work does not affect the exterior or structural aspects of the North Building or the Demised Premises or any of the building systems serving the Demised Premises, provided Tenant gives Landlord at least ten (10) days prior written notice of such work. In addition, Tenant at its expense, may install up to a 600 kilowatt back up generator and tank adjacent to the Building at the location reasonably designated by Landlord, subject to Landlord's approval of the plans and specifications therefor, including but not limited to it's design, size and operating specifications. The generator, tank and connecting facilities shall be installed and maintained in a manner not to disturb the other tenants in the Building Project, in compliance with all applicable Governmental Requirements. Tenant shall cause the generator and the connecting conduit or other facilities to be covered under Tenant's liability insurance policy. Tenant, at its own cost, shall maintain and keep the generator and connecting conduit or other facilities in good condition and repair, including any required replacements thereof. If any contractor, other than Landlord, shall perform work, such contractor shall first be approved by Landlord. Notwithstanding the foregoing, Tenant shall pay to Landlord its customary Building charges for security, engineers and other required Building personnel in connection with Tenant's initial work, provided such charges shall not be more than the amount charged to other tenants in the Building Project. In connection with any request by Tenant of Landlord that Landlord approve a contractor or subcontractors, Tenant shall cause the proposed contractor or subcontractor to complete and submit to Landlord such reasonable questionnaire, if any, as Landlord shall require as part of Landlord's contractor integrity program. Thereafter, Tenant agrees to reasonably cooperate with Landlord in connection with the implementation of such program and to cause it contractors to comply therewith. Tenant covenants and agrees that all of its work, including but not limited to transportation of major construction materials, shall be performed only by contractors and/or subcontractors having collective bargaining agreements with unions affiliated with the AFL-CIO Building Trades Department. As soon as possible but not more than forty five (45) days prior to commencement of the work, Tenant shall provide Landlord with a list of proposed names of the general contractor and subcontractors for Landlord's approval, which approval shall not be unreasonably withheld or delayed, and upon such approval, for Landlord's submission thereof to the local Building Trades council for verification as to their current status. Workers' compensation and public liability insurance and property damage insurance, all in amounts and with companies and/or forms reasonably satisfactory to Landlord, shall be provided and at all times maintained by Tenant's contractors engaged in the performance of the work, and before proceeding with the work, certificates of such insurance shall be furnished to Landlord. Except for the Building charges set forth above, Landlord shall be entitled to no other charges or supervision fee in connection with Tenant's initial work under this Lease (i.e., work done by Tenant or its contractors within six (6) months of the Commencement Date) and for Tenant's work thereafter, Landlord shall be entitled to be paid its reasonable out-of-pocket costs incurred in connection with Landlord's security, engineers and supervising such Tenant work. If consented to by Landlord, all such work shall be done at Tenant's sole expense and in full

6

compliance with all governmental authorities having jurisdiction thereover and shall be done in a good and workmanlike manner, provided that Landlord shall contribute Landlord's Initial Contribution and Landlord's Remainder Contribution, if applicable, toward the cost of Tenant's initial work, pursuant to the provisions of Article 39. Upon completion of the initial work, Tenant shall deliver to Landlord full scale "as built" plans for the same. All work affixed to the realty or if not so affixed but for which Tenant shall have received a credit, shall become the property of Landlord, subject to Tenant's right to replace same during the term hereof with items of equal quality class and value, and shall remain upon, and be surrendered with, the Demised Premises as a part thereof at the end of the term or any renewal or extension term, as the case may be, without allowance to Tenant or charge to Landlord, unless Landlord elects otherwise on notice to Tenant given at the time Landlord approves such work that Tenant will be required to remove such work. However, if Landlord shall elect otherwise, Tenant at Tenant's expense, at or prior to any termination of this Lease, shall remove all such work or such portion thereof as Landlord shall elect and Tenant shall restore such portion of the Demised Premises to its original condition, reasonable wear and tear excepted, at Tenant's expense. Notwithstanding the foregoing, Tenant shall not be required to remove its initial work in the Demised Premises. If any North Building facilities or services, including but not limited to air-conditioning and ventilating equipment installed by Landlord, are adversely affected or damaged by reason of the work by Tenant, Tenant, at its expense, shall repair such damage to the extent such damage has been caused by Tenant's work and shall correct the work so as to prevent any further damage or adverse effect on such facilities or services.

Section 5.02.    Prior to commencing any work pursuant to the provisions of Section 5.01, Tenant shall furnish to Landlord:

(a)    Plans and specifications for the work to be done.

(b)    Copies of all governmental permits and authorizations which may be required in connection with such work.

(c)    A certificate evidencing that Tenant (or Tenant's contractor) has procured workers' compensation insurance covering all persons employed in connection with the work who might assert claims for death or bodily injury against Landlord, Tenant, any mortgagee or the Building Project.

(d)    Such additional personal injury and property damage insurance (over and above the insurance required to be carried by Tenant pursuant to the provisions of Section 9.03) as Landlord may reasonably require because of the nature of the work to be done by Tenant.

Section 5.03.    Where furnished by or at the expense of Tenant (except the replacement of an item theretofore furnished and paid for by Landlord or for which Tenant has received a credit), all movable property, furniture, furnishings, roller files, equipment and trade fixtures ("personalty") other than those affixed to the realty shall

7

remain the property of and shall be removed by Tenant on or prior to any termination or expiration of this Lease, and, in the case of damage by reason of such removal, Tenant, at Tenant's expense, promptly shall repair the damage. If Tenant does not remove any such personalty, Landlord, at its election, (a) may cause the personalty to be removed and placed in storage at Tenant's expense or (b) may treat the personalty as abandoned and may dispose of the personalty as it sees fit without accounting to Tenant for any proceeds realized upon such disposal.

Section 5.04.    Tenant agrees that the exercise of its rights pursuant to the provisions of this Article 5 shall not be done in a manner which would create any work stoppage, picketing, labor disruption or dispute or violate Landlord's union contracts affecting the Building Project or interfere with the business of Landlord or any tenant or occupant of the Building Project. In the event of the occurrence of any condition described above arising from the exercise by Tenant of its right pursuant to the provisions of this Article 5, Tenant shall, immediately upon notice from Landlord, cease the manner of exercise of such right giving rise to such condition. In the event Tenant fails to cease such manner of exercise of its rights as aforesaid, Landlord, in addition to any rights available to it under this Lease and pursuant to law, shall have the right to injunction without notice. With respect to Tenant's work, Tenant shall make all arrangements for, and pay all expenses incurred in connection with, use of the freight elevators servicing the Demised Premises during those hours other than as provided in Section 21.01(a) in accordance with Landlord's customary charges therefor, provided such charges shall not be more than the amount charged to other tenants in the Building Project. However, there will be no charge in connection with Tenant's use of the freight elevators during non-business hours with respect to Tenant's initial work in the Demised Premises.

## ARTICLE 6

## Repairs

Section 6.01.    Tenant shall take good care of the Demised Premises and the fixtures therein and at its sole cost and expense make all repairs thereto as and when needed to preserve them in good working order and condition, except to the extent required of Landlord under this Lease. However, Tenant, at its expense, shall make all repairs to the HVAC, mechanical, plumbing and electrical systems within the Demised Premises due to the negligence or willful misconduct of Tenant, its agents, contractors or employees. All damage or injury to the Demised Premises or the North Building or to any building equipment or systems caused by Tenant moving property in or out of the North Building or by installation or removal of personalty or resulting from negligence or conduct of Tenant, its employees, agents, contractors, customers, invitees and visitors, shall be repaired, promptly by Tenant at Tenant's expense, and whether or not involving structural changes or alterations, to the satisfaction of Landlord. All repairs shall include

8

replacements or substitutions where necessary and shall be at least equal to the quality, class and value of the property repaired, replaced or substituted and shall be done in a good and workmanlike manner.

Section 6.02.        Landlord, at its expense, shall maintain and make all repairs and replacements, structural and otherwise, to the exterior and public portions of the North Building, Common Areas and to the Demised Premises, including, without limitation, the HVAC, mechanical, plumbing and electrical systems serving the North Building and Demised Premises and roof of the North Building, unless Tenant is required to make them under the provisions of Section 6.01 or unless required as a result of the performance or existence of alterations performed by Tenant or on Tenant's behalf, in which event Tenant, at its expense, shall perform such maintenance, repairs or replacements. Tenant shall notify Landlord of the necessity for any repairs for which Landlord may be responsible in the North Building, Common Areas and the Demised Premises under the provisions of this Section. Landlord shall have no liability to Tenant by reason of any inconvenience, annoyance, interruption or injury to business arising from Landlord's making any repairs or changes which Landlord is required or permitted by this Lease, or required by law, to make in or to any portion of the North Building, Common Areas or the Demised Premises, or in or to the fixtures, equipment or appurtenances of the North Building, Common Areas or the Demised Premises. However, Landlord shall use reasonable efforts to perform such repairs or changes in a manner to minimize interference with the normal conduct of Tenant's business, provided Landlord shall not be required to employ overtime or premium labor.

Section 6.03.        Tenant shall not store or place any materials or other obstructions in the lobby or other public portions of the North Building, or on the sidewalk abutting the North Building.

## ARTICLE 7

## Floor Load; Noise

Section 7.01.        Tenant shall not place a load upon any floor of the Demised Premises which exceeds the load per square foot which such floor was designed to carry (50 lbs. live per square foot) and which is allowed by law.

Section 7.02.        Non-standard business machines and mechanical equipment belonging to Tenant which cause unreasonable noise, vibration or any other nuisance that may be transmitted to the structure or other portions of the North Building or to the Demised Premises, to such a degree as to be reasonably objectionable to Landlord or which unreasonably interfere with the use or enjoyment by other tenants of their premises or the public portions of the North Building, shall be placed and maintained

9

by Tenant, at Tenant's expense, in settings of cork, rubber or spring type vibration eliminators sufficient to eliminate such objectionable or interfering noise or vibration.

## ARTICLE 8

## Laws, Ordinances, Requirements of Public Authorities

Section 8.01.    (a)    Tenant, at its expense, shall comply with all laws, orders, ordinances, rules and regulations and directions of Federal, State, County and Municipal authorities and departments thereof having jurisdiction over the Demised Premises and the North Building, including but not limited to the Americans With Disabilities Act (collectively "Governmental Requirements"), referable to Tenant or the Demised Premises, arising by reason of Tenant's particular use or manner of use of the Demised Premises (in contradistinction to its use merely as offices) or any installations made therein by or at Tenant's request, or any default by Tenant under this Lease. Notwithstanding the foregoing, Landlord at its expense, shall do the work necessary to put the bathrooms on each floor of the Demised Premises in compliance with the American With Disabilities Act.

(b)    Tenant covenants and agrees that Tenant shall, at Tenant's sole cost and expense, comply at all times with all Governmental Requirements governing the use, generation, storage, treatment and/or disposal of any "Hazardous Materials" (which term shall mean any biologically or chemically active or other toxic or hazardous wastes, pollutants or substances, including, without limitation, asbestos, PCBs, petroleum products and by-products, substances defined or listed as "hazardous substances" or "toxic substances" or similarly identified in or pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., and as hazardous wastes under the Resource Conservation and Recovery Act, 42 U.S.C. § 6010 et seq., any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. § 2601 et seq., any "toxic pollutant" under the Clean Water Act, 33 U.S.C. § 466 et seq., as amended, any hazardous air pollutant under the Clean Air Act, 42 U.S.C. § 7401 et seq., hazardous materials identified in or pursuant to the Hazardous Materials Transportation Act, 49 U.S.C. § 1802 et seq., and any hazardous or toxic substances or pollutant regulated under any other Governmental Requirements). Tenant shall agree to execute, from time to time, at Landlord's reasonable request, affidavits, representations and the like concerning Tenant's best knowledge and belief regarding the presence of Hazardous Materials in, on, under or about the Demised Premises, the North

10

Building, the Building Project or the Land. Tenant shall indemnify and hold harmless Landlord, its partners, officers, shareholders, members, directors and employees, and any mortgagee (collectively, the "Indemnitees"), from and against any loss, cost, damage, liability or expense (including reasonable attorneys' fees and disbursements) arising by reason of any cleanup, removal, remediation, detoxification action or any other activity required or recommended of any Indemnitees by any government authority by reason of the presence in or about the Building Project, the Land, the North Building or the Demised Premises of any Hazardous Materials, as a result of or in connection with the act or omission of Tenant or any person or entity within Tenant's control or the breach of this Lease by Tenant or any person or entity within Tenant's control. The foregoing covenants and indemnity shall survive the expiration or any termination of this Lease. Landlord represents and warrants that on the Commencement Date the Demised Premises will not contain any Hazardous Materials. At the time Tenant submits its plans and specifications for its initial work to Landlord for its approval, as provided in Article 39, Landlord will provide Tenant with a letter from a certified environmental engineer stating that there is no asbestos in the Demised Premises. Landlord shall indemnify, defend and hold Tenant, its partners, officers, shareholders, members, directors and employees harmless from and against any claim, loss, cost, damage, liability or expense (including reasonable attorneys' fees and disbursements) arising from any breach of the representation and warranty made by Landlord in the immediately preceding sentence. Notwithstanding anything to the contrary contained in this Lease, Landlord shall be responsible for all costs and expenses relating to Hazardous Materials in the Demised Premises on the Commencement Date, unless such costs and expenses are directly due to Tenant's intentional acts or negligence.

(c)     Landlord, at its expense, shall comply with and cure Governmental Requirements relating to the public portions of the North Building (including the Common Areas) and to the Demised Premises, provided that Tenant is not obligated to comply with them under the provisions of subdivision (a) of this Section. Landlord represents and warrants that as of the Commencement Date, the Demised Premises shall be in compliance with all applicable Governmental Requirements and that the Demised Premises are zoned for the permitted use set forth in Section 4.01. Landlord, at its expense, may contest the validity of any Governmental Requirements and postpone compliance therewith pending such contest; provided, however, that Landlord shall be responsible, at Landlord's sole cost and expense, for all fines, penalties and other charges incurred in connection with any Landlord contest of Governmental Requirements and/or failure to comply with such Governmental Requirements that Landlord is obligated to comply with.

11

Section 8.02.    If Tenant receives written notice of any violation of any Governmental Requirements applicable to the Demised Premises, it shall give prompt notice thereof to Landlord.

Section 8.03.    Tenant will not clean, nor allow any window in the Demised Premises to be cleaned, from the outside in violation of any applicable health and safety laws and/or Governmental Requirements.

## ARTICLE 9

### Insurance

Section 9.01.    Tenant shall not do or permit to be done any act or thing in or upon the Demised Premises which will invalidate or be in conflict with the Certificate of Occupancy for the North Building or the Building Project or the terms of the insurance policies covering the North Building or the Building Project and the property and equipment therein; and Tenant, at its expense, shall comply with all rules, orders, regulations and requirements of the New York Board of Fire Underwriters or any other similar body having jurisdiction, and of the insurance carriers, and shall not knowingly do or permit anything to be done in or upon the Demised Premises in a manner which increases the rate of insurance for the North Building or the Building Project or any property or equipment therein over the rate in effect on the Commencement Date.

Section 9.02.    If, by reason of Tenant's failure to comply with the provisions of Section 9.01 or any of the other provisions of this Lease, the rate of insurance for the North Building or the Building Project or the property and equipment of Landlord shall be higher than on the Commencement Date, Tenant shall pay to Landlord any additional or increased insurance premiums to the extent resulting therefrom thereafter paid by Landlord, and Tenant shall make such payment forthwith on demand of Landlord. In any action or proceeding wherein Landlord and Tenant are parties, a schedule or "make up" of any insurance rate for the North Building or Demised Premises or the Building Project issued by the New York Fire Insurance Exchange, or other body establishing fire insurance rates for the North Building, the Demised Premises or the Building Project, shall be conclusive evidence of the facts therein stated and of the several items and charges in the insurance rates then applicable to the North Building or Demised Premises or the Building Project.

Section 9.03.    (a)    Tenant covenants to provide on or before the Commencement Date and to keep in force during the term hereof, the following insurance coverage:

12

(i) A commercial general liability policy including blanket contractual liability naming Landlord (and Landlord's designees) and any mortgagee as additional insureds, protecting and indemnifying Landlord, Tenant and any mortgagee against any and all claims for personal injury, death, bodily injury or property damage occurring upon, in or about the Demised Premises, and the public portions of the North Building in connection with any act of Tenant, its employees, agents, contractors, customers, invitees and visitors including, without limitation, personal injury, death, bodily injury or property damage resulting from Tenant's use and occupancy of the Demised Premises and any work performed by or on behalf of Tenant, with coverage of not less than $5,000,000.00 combined single limit for personal injury, death and property damage arising out of one occurrence or accident.

(ii) All risk property insurance utilizing the special form in an amount adequate to cover the cost of replacement of all personal property, fixtures, furnishings and equipment, including Landlord's work as provided in Schedule B and Tenant's work (as referred to in Section 5.01), located in the Demised Premises.

(b) All such insurance shall (i) be effected under valid and enforceable policies, (ii) be issued by insurers of recognized responsibility authorized to do business in the State of New York, (iii) contain a provision whereby the insurer agrees not to cancel the insurance without thirty (30) days' prior written notice to Landlord, and any mortgagee of Landlord and (iv) contain a provision that no act or omission of Tenant shall result in forfeiture of the insurance as against Landlord or any mortgagee of Landlord.

On or before the Commencement Date, Tenant shall deliver to Landlord duplicate originals of the aforesaid policies or certificates evidencing the aforesaid insurance coverage, and renewal policies or certificates shall be delivered to Landlord at least thirty (30) days prior to the expiration date of each policy with proof of payment of the premiums thereof.

Section 9.04.    Landlord shall, at all times, maintain the following insurance:

(i) A commercial general liability insurance applicable to the Building Project providing, on an occurrence basis, with a minimum combined single limit of at least $5,000,000; and

13

(ii) All risk property insurance utilizing the special form on the North Building at full replacement cost value.

Section 9.05.    Landlord and Tenant shall each secure an appropriate clause in, or an endorsement upon, each fire or extended coverage policy obtained by it and covering the North Building, the Demised Premises or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party (including any mortgagee of Landlord). The waiver of subrogation or permission for waiver of any claim herein before referred to shall extend to the agents of each party and its employees and, in the case of Tenant, shall also extend to all other persons and entities occupying or using the Demised Premises in accordance with the terms of this Lease. If and to the extent that such waiver or permission can be obtained only upon payment of an additional charge, then, the party benefitting from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

Subject to the foregoing provisions of this Section 9.04, and insofar as may be permitted by the terms of the insurance policies carried by it, (i) each party hereby releases the other (including any mortgagee of Landlord) with respect to any claim (including a claim for negligence) which it might otherwise have against the other party for loss, damages or destruction with respect to its property by fire or other casualty (including rental value or business interruption, as the case may be) occurring during the term of this Lease and (ii) Tenant releases other tenants but only to the extent that the policies of such Lease and (ii) Tenant releases other tenants but only to the extent that the policies of such other tenants permit a similar waiver for the benefit of Tenant and such other tenant gives such a waiver.

## ARTICLE 10

### Damage by Fire or Other Cause

Section 10.01.    If the Demised Premises shall be damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord and the minimum rent and additional rent until such repairs shall be made, shall be apportioned according to the part of the Demised Premises which is usable by Tenant. Landlord shall have no responsibility to repair any damage to Landlord's work as provided in Schedule B or Tenant's work (as referred to in Section 5.01), the same being the responsibility of Tenant. No penalty shall accrue for delays which may arise by reason of adjustment of insurance by Landlord, unavoidable delays (as hereinafter defined), or any other cause beyond Landlord's reasonable control. Tenant shall give notice to Landlord promptly upon

14

learning thereof in case of fire or other damage to the Demised Premises. If the Demised Premises are totally or substantially damaged or are rendered wholly or substantially unusable by fire or any such other casualty, or if the North Building shall be so damaged that Landlord shall decide to demolish it or to rebuild it (whether or not the Demised Premises shall have been damaged), Landlord at its election may terminate this Lease by written notice to Tenant, within ninety (90) days after such fire or other casualty, and thereupon the term of this Lease shall expire by lapse of time upon the third (3rd) day after such notice is given, and Tenant shall vacate and surrender the Demised Premises to Landlord. If more than twenty-five (25%) percent of the rentable square feet of the Demised Premises shall be damaged during the last two (2) years of the term hereof, Landlord or Tenant may, at either party's election, terminate this Lease by written notice to the other within ninety (90) days after such damage, in which event this Lease shall terminate upon the third (3rd) day after such notice is given, and Tenant shall vacate and surrender the Demised Premises to Landlord. Tenant shall not be liable under this Lease for anything accruing after the date of such expiration. Tenant hereby waives the provisions of Section 227 of the Real Property Law, and the provisions of this Article shall govern and control in lieu thereof. If the damage is due to the fault or neglect of Tenant, the debris shall be removed by, and at the expense of, Tenant.

Section 10.02.    No damages or compensation shall be payable by Landlord nor shall Tenant make any claim for inconvenience, loss of business or annoyance arising from any repair or restoration of any portion of the Demised Premises or of the North Building. However Landlord shall use reasonable efforts to perform such repair or restoration in a manner to minimize interference with the normal conduct of Tenant's business, provided Landlord shall not be required to employ overtime or premium labor.

## ARTICLE 11

## Assignment, Subletting, Mortgaging

Section 11.01.    Tenant will not, by operation of law or otherwise, assign, mortgage or encumber this Lease, or sublet or permit the Demised Premises or any part thereof to be occupied or used by others for desk space, mailing privileges or otherwise, without Landlord's prior written consent in each instance, which consent shall not be unreasonably withheld subject to the provisions of Section 11.05. If this Lease be assigned, or if the Demised Premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord, may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no assignment, underletting, occupancy or collection shall be deemed a waiver of the provisions hereof, the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to any assignment,

15

subletting, mortgage or encumbrance shall not in any manner be construed to relieve Tenant from obtaining Landlord's express consent to any other or further assignment, subletting, mortgage or encumbrance. In no event shall any permitted sublessee assign or encumber its sublease or further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space or any part thereof to be used or occupied by others, without Landlord's prior written consent in each instance.

Section 11.02.    The provisions in this Section are subject to the "Permitted Transfer" and "IPO Transfer" provisions of Sections 11.05 and 11.09, respectively. If Tenant shall at any time or times during the term of this Lease desire to assign this Lease or sublet all or part of the Demised Premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by (a) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than thirty (30) nor more than 180 days after the giving of such notice, (b) a statement, setting forth in reasonable detail the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the Demised Premises, and (c) a statement, in sufficient detail satisfactory to Landlord, setting forth the calculations of the sums to be payable to Landlord pursuant to the provisions of Section 10.10, and (d) current financial information with respect to the proposed assignee or subtenant, including, without limitation, its most recent financial report.   Such notice shall be deemed an offer from Tenant to Landlord whereby Landlord (or Landlord's designee) may, at its option, (i) terminate this Lease if the proposed transaction is an assignment or a sublease (whether by one sublease or a series of related or unrelated subleases) of all of substantially all of the Demised Premises, or (ii) terminate this Lease with respect to the space being sublet (if the proposed transaction is a sublease of part of the Demised Premises for the balance or substantial balance of the term).  Said options may be exercised by Landlord by notice to Tenant at any time within twenty (20) days after such notice has been given by Tenant to Landlord; and during such twenty (20) day period Tenant shall not assign this Lease nor sublet such space to any person. If Landlord fails to respond to any request for consent within the twenty (20) day period set forth above, Tenant shall have the right to provide Landlord with a second request for consent. Tenant's second request for consent must be delivered within five (5) business days after the expiration of the aforesaid twenty (20) day period and must specifically state that Landlord's failure to respond by 5 p.m. (Pacific Time Zone) of the 1st full business day after its receipt of the second request for consent, the proposed assignment or sublease for which Tenant has requested consent shall be deemed to have been approved by Landlord. If Tenant fails to deliver said second request within the aforesaid five (5) business day period then Landlord shall be deemed to have disapproved such proposed assignment or sublease.

Section 11.03.    If Landlord exercises its option to terminate this Lease in the case where Tenant desires either to assign this Lease or sublet (whether by one sublease or a series of related or unrelated subleases) all or substantially all of the Demised Premises, then, this Lease shall end and expire on the date that such assignment or sublet was to be effective or commence, as the case may be, and the minimum rent and additional rent shall be paid and apportioned to such date.

Section 11.04.    If Landlord exercises its option to terminate this Lease in part in any case where Tenant desires to sublet part of the Demised Premises for the balance or substantial balance of the term, then, (a) this Lease shall end and expire with respect to such part of the Demised Premises on the date that the proposed sublease was to commence; and (b) from and after such date the minimum rent and additional rent shall be adjusted, based upon the proportion that the rentable area of the Demised Premises remaining bears to the total rentable area of the Demised Premises; and (c) Tenant shall pay the costs incurred by Landlord in physically separating such part of the Demised Premises from the balance of the Demised Premises and in complying with any laws and requirements of any public authorities relating to such separation.

Section 11.05.    In the event Landlord does not exercise an option provided to it pursuant to Section 11.02 and provided that Tenant is not in default in any of Tenant's obligations under this Lease, Landlord's consent (which must be in writing and in form reasonably satisfactory to Landlord) to the proposed assignment or sublease shall not be unreasonably withheld or delayed, provided and upon condition that:

(a)    Tenant shall have complied with the provisions of Section 11.02 and Landlord shall not have exercised any of its options under said Section 11.02;

(b)    In Landlord's reasonable judgment, the proposed assignee or subtenant is engaged in a business and the Demised Premises, or the relevant part thereof, will be used in a manner which (i) is limited to the use expressly permitted under Sections 4.01 and 4.02 of this Lease, and (ii) is in keeping with the then prestige of the Building Project;

(c)    The proposed assignee or subtenant is with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

(d)    Neither (i) the proposed assignee or sublessee nor (ii) any person which, directly or indirectly, controls, is controlled by or is under common control with, the proposed assignee or sublessee, is then an occupant of any part of the Building Project, provided there is then other comparable space in the Building Project available for lease from Landlord;

(e)    The proposed assignee or sublessee is not a person with whom Landlord is currently actively negotiating to lease space in the Building Project;

(f)    The proposed sublease shall be in form reasonably satisfactory to Landlord and shall comply with the provisions of this Article;

17

(g)    At any one time there shall not be more than two (2) subtenants (including Landlord or its designee) in any one full floor of the Demised Premises;

(h)    Tenant shall reimburse Landlord on demand for any reasonable costs that may be incurred by Landlord in connection with said assignment or sublease, including, without limitation, the reasonable costs incurred in making investigations as to the acceptability of the proposed assignee or subtenant, and reasonable legal costs incurred in connection with the granting of any requested consent, provided that during the initial term only, such costs shall not exceed $3,500 with respect to any one transaction;

(i)    Tenant shall not have (i) advertised in any way the availability of the Demised Premises without prior notice to Landlord, or (ii) listed the Demised Premises in any public media at a rental rate less than the minimum rent and additional rent at which Landlord is then offering to lease other space in the Building Project; and

(j)    The proposed subtenant or assignee shall not be entitled, directly or indirectly, to diplomatic or sovereign immunity and shall be subject to the service of process in and the jurisdiction of the courts of New York State.

Each subletting pursuant to this Article shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this Lease. Notwithstanding any such subletting to any other subtenant and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment for the minimum rent and additional rent due and to become due hereunder and for the performance of all the covenants, agreements, terms, provisions and conditions contained in this Lease on the part of Tenant to be performed and all acts and omissions of any licensee or subtenant or anyone claiming under or through any subtenant which shall be in violation of any of the obligations of this Lease, and any such violation shall be deemed to be a violation by Tenant. Tenant further agrees that notwithstanding any such subletting, no other and further subletting of the Demised Premises by Tenant or any person claiming through or under Tenant shall or will be made except upon compliance with and subject to the provisions of this Article.

So long as Tenant is not entering into the Permitted Transfer (as hereinafter defined) for the purpose of avoiding or otherwise circumventing the terms of this Article 11, Tenant, subject to the provisions of the immediately preceding paragraph and of Section 11.07, may sublease all or any portion of the Demised Premises, without the consent of Landlord, to (i) an affiliate, direct or indirect subsidiary, operating division (so long as the operating division legally exists as a separate, viable, legal entity), or parent of Tenant, or a corporation, partnership or other legal entity wholly owned directly or indirectly by Tenant

18

(collectively, an "Affiliated Party"), or (ii) a successor to Tenant or any of the foregoing entities by purchase, merger, consolidation, reorganization or otherwise, provided that all of the following conditions are satisfied (each such transfer a "Permitted Transfer"): (1) Tenant is not in default under this Lease; (2) the use shall be as permitted in Section 4.01 of this Lease; (3) Tenant shall give Landlord written notice at least thirty (30) days prior to the effective date of the proposed Permitted Transfer; (4) with respect to a proposed Permitted Transfer to an Affiliated Party, such Affiliated Party continues to have a net worth equal to or greater than Twenty Five Million Dollars ($25,000,000.00); and (5) with respect to a purchase, merger, consolidation or reorganization or any Permitted Transfer which results in Tenant ceasing to exist as a separate legal entity, (a) Tenant's successor shall own all or substantially all of the assets of Tenant, and (b) Tenant's successor shall have a net worth which is at least equal to Twenty Five Million Dollars ($25,000,000). Tenant's notice to Landlord shall include information and documentation showing that each of the above conditions has been satisfied. As used herein, (A) "parent" shall mean a company which owns a majority of Tenant's voting equity; (B) "subsidiary" shall mean an entity wholly owned by Tenant or at least 51% of whose voting equity is owned by Tenant; and (C) "affiliate" shall mean an entity controlled by, controlling or under common control with Tenant. Landlord agrees that it will keep confidential all financial information of Tenant or an Affiliated Entity given to Landlord under this Lease and will limit its dissemination to its accountants, attorneys, lenders, and others with a business need to know that information, or as required in any legal proceedings and will use its commercially reasonable efforts to obtain confidentiality covenants from such persons.

Argent Mortgage Company ("Argent") is a direct wholly-owned subsidiary of Tenant which will be the initial occupant of the Demised Premises, to which occupancy Landlord hereby consents and who is included in references to the "herein named Tenant" in this Lease; provided, however, such occupancy shall not create any privity or landlord and tenant relationship between Argent and Landlord, nor shall Landlord have any responsibilities or obligations under this Lease to Argent.

Section 11.06.  In the event that (a) Landlord consents to a proposed assignment or sublease, and (b) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within ninety (90) days after the giving of such consent, then, Tenant shall again comply with all of the provisions and conditions of Section 11.02 before assigning this Lease or subletting all or part of the Demised Premises.

Section 11.07.  With respect to each and every sublease or subletting authorized by Landlord under the provisions of this Lease, it is further agreed:

(a)    No subletting shall be for a term ending later than one day prior to the expiration date of this Lease;

19

(b)    No sublease shall be valid, and no subtenant shall take possession of the Demised Premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord;

(c)    Each sublease shall provide that it is subject and subordinate to this Lease and to the matters to which this Lease is or shall be subordinate, and that in the event of termination, re-entry or dispossess by Landlord under this Lease Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor, under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (i) be liable for any previous act or omission of Tenant under such sublease, (ii) be subject to any offset, not expressly provided in such sublease, which thereto accrued to such subtenant against Tenant, or (iii) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent.

Section 11.08.    If Landlord gives its consent to any assignment of this Lease or to any sublease, Tenant shall, in consideration therefor, pay to Landlord, as additional rent:

(a)    in the case of an assignment of this Lease or an assignment of any sublease, an amount equal to one-half of all sums and other considerations paid to Tenant from the assignee for such assignment or paid to Tenant by any sublessee or other person claiming through or under Tenant for such assignment (including, but not limited to sums paid for the sale of Tenant's or sublessee's fixtures, leasehold improvements, less, in case of a sale thereof, the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's or sublessee's federal income tax returns). The sums payable to Landlord under this Section 11.10(a) shall be paid to Landlord as and when paid by such assignee to Tenant; and

(b)    in the case of a sublease, an amount equal to one-half of the rents and charges and other consideration payable under the sublease to Tenant by the subtenant or paid to Tenant by any such sublessee or other person claiming through or under Tenant in connection with such subletting which is in excess of the minimum rent and additional rent under Article 22 accruing during the term of the sublease in respect of the subleased space (at the rate per square foot payable by Tenant hereunder or such sublessee) pursuant to the terms of this Lease (including, but not limited to, sums paid for the sale or rental of Tenant's fixtures, leasehold improvements, less, in the case of the sale thereof, the then net unamortized or undepreciated cost thereof determined on the basis of Tenant's or sublessee's federal income tax returns). The sums payable to Landlord under this Section 11.10(b) shall be paid to Landlord as and when paid by such subtenant to Tenant.

20

(c)    For the purpose of computing the sums payable by Tenant to Landlord under subparagraphs (a) and (b) hereof, there shall be deducted from the consideration payable to Tenant by any assignee or sublessee any transfer taxes, rent concession, reasonable attorneys' fees, reasonable brokerage commissions, advertising costs and fix-up costs paid by Tenant with respect to such assignment or subletting, but only to the extent any such sums are allocable to the period of this Lease (in the case of any assignment), or the term of any sublease.

Section 11.09   If Tenant, the sublessee or the permitted assignee is a corporation, partnership, limited liability company or other entity, the provisions of Section 11.01 shall apply to a transfer (by one or more transfers) of a majority of the stock, partnership, membership or other ownership interests of Tenant or the sublessee, as the case may be, as if such transfer of a majority of the stock, partnership, membership or other ownership interests of Tenant or the sublessee were an assignment of this Lease; but said provisions and the provisions of Section 11.02 shall not apply to transfers for estate planning purposes, to a Permitted Transfer (as hereinabove defined), to an IPO Transfer (as hereinafter defined) or as long as Tenant is an entity whose outstanding stock is listed on a recognized security exchange, or if at least 80% of its voting stock is owned by another entity, the voting stock of which is so listed. However, subject to the provisions of Section 11.10, Tenant may assign this Lease without Landlord's consent, in connection with a Permitted Transfer (as defined in Section 11.05), provided Tenant is not entering into the Permitted Transfer of the purpose of avoiding or otherwise circumventing the terms of this Article 11, and further provided that a duly executed counterpart of such assignment together with an assumption of this Lease by the assignee, both in form reasonably satisfactory to Landlord, is delivered to Landlord at least five (5) days prior to its effective date.  Notwithstanding any other provision in this Lease, subject to the provisions of Section 11.10, Landlord's consent shall not be required with respect to an assignment of the Lease in connection with an IPO (as hereinafter defined)(an "IPO Transfer") provided a duly executed counterpart of such assignment together with an assumption of this Lease by the assignee, both in form reasonably satisfactory to Landlord, is delivered to Landlord at least five (5) days prior to its effective date.  An "IPO" shall mean where (a) Tenant or an Affiliated Party (defined in Section 11.05) engages in an initial public offering of equity securities under the Securities Act of 1933, as amended, which securities are to be traded on a national securities exchange, including, but not limited to, the NYSE, the NASDAQ Stock Market or the NASDAQ Small Cap market System (the "IPO") and (b) Tenant's assignee following the IPO has a net worth that is equal to or greater than Twenty Five Million Dollars ($25,000,000).

Section 11.10.   Any assignment or transfer, whether made with Landlord's consent pursuant to Section 11.01 or without Landlord's consent pursuant to Section 11.09, shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement in form and substance reasonably satisfactory to Landlord whereby the assignee shall assume the obligations of this Lease on the part of Tenant to be performed or observed and whereby the assignee shall agree

21

that the provisions in this Article 11 shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this Lease, and notwithstanding the acceptance of minimum rent and/or additional rent by Landlord from an assignee, transferee, or any other party, the original named Tenant shall remain fully liable for the payment of the minimum rent and additional rent and for the other obligations of this Lease on the part of Tenant to be performed or observed.

Section 11.11.    The joint and several liability of Tenant and any immediate or remote successor in interest of Tenant and the due performance of the obligations of this Lease on Tenant's part to be performed or observed shall not be discharged, released or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this Lease, or by any waiver or failure of Landlord to enforce any of the obligations of this Lease.

Section 11.12.    The listing of any name other than that of Tenant, whether on the doors of the Demised Premises, the Building Project directory, if any, or the North Building directory, or otherwise, shall not operate to vest any right or interest in this Lease or in the Demised Premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this Lease, to any sublease of the Demised Premises, or to the use or occupancy thereof by others.

# ARTICLE 12

## Liability and Indemnity of Landlord and Tenant

Section 12.01.    Except to the extent caused by the negligence or willful misconduct of Landlord, its agents, contractors or employees, or by a Landlord breach, Tenant shall indemnify Landlord, its officers, directors, partners, members, agents, servants and employees against and save Landlord its officers, directors, partners, members, agents, servants and employees harmless from any liability to and claim by or on behalf of any person, firm, governmental authority, corporation or entity for personal injury, death or property damage, arising:

(a)    from the use by Tenant of the Demised Premises, or from any work whatsoever done or omitted to be done by Tenant, its employees, agents, contractors, customers, invitees or visitors, or from any accident thereat; and

22

(b)    from any breach or default by Tenant of and under any of the terms, covenants and conditions of this Lease on Tenant's part to be performed.

Tenant also shall indemnify Landlord its officers, directors, partners, members, agents, servants and employees against and save Landlord its officers, directors, partners, members, agents, servants and employees harmless from all costs, reasonable counsel fees, expenses and penalties incurred by Landlord in connection with any such liability or claim other than such liability or claim incurred as a result of the negligence or willful misconduct of Landlord, its agents, contractors or employees or of a Landlord breach.

If any action or proceeding shall be brought against Landlord its officers, directors, partners, members, agents, servants and employees in connection with any such liability or claim, Tenant, on notice from Landlord, shall defend such action or proceeding, at Tenant's expense, by counsel reasonably satisfactory to Landlord, or by the attorney for Tenant's insurance carrier whose insurance policy covers the liability or claim.

Section 12.02.   Except to the extent caused by the negligence or willful misconduct of Tenant, its agents, contractor or employees, or by a Tenant breach, Landlord shall indemnify and defend Tenant, its officers, directors, partners, members, agents, servants and employees harmless from and against any and all claims, losses, liabilities, obligations, damages, penalties, costs, charges and expenses, including, without limitation, reasonable attorneys' fees, arising out of or in connection with (i) Landlord's breach of any of the terms, covenants and conditions of this Lease and (ii) the acts and omissions (including violations of Governmental Requirements) of Landlord, its agents, contractors or employees.

If any action or proceeding shall be brought against Tenant, its officers, directors, partners, members, agents, servants and employees in connection with any such liability or claim, Landlord, on notice from Tenant, shall defend such action or proceeding at Landlord's expense, by counsel reasonably satisfactory to Tenant, or by the attorney for Landlord's insurance carrier whose insurance policy covers the liability or claim.

Section 12.03.   Except for the negligence or willful misconduct of Landlord, or its agents, contractors or employees, or for a Landlord breach, Landlord shall not be liable for any damage to property of Tenant or of others entrusted to employees of the North Building or the Building Project, nor for the loss of or damage to any property of Tenant by theft or otherwise. Except for the negligence or willful misconduct of Landlord, its agents, contractors or employees or for a Landlord breach, Landlord and its agents shall not be liable for any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water, rain or snow or leaks from any part of the North Building or from the pipes, appliances or plumbing works or from the roof, street or sub-surface or from any other place or by dampness or by any other cause of whatsoever nature; nor shall Landlord be liable for any such damage caused by other

23

tenants or persons in the North Building or caused by operations in construction of any public or quasi-public work. At any time any windows of the Demised Premises are permanently closed, darkened or bricked up by reason of the requirements of law or temporarily closed or darkened by reason of repairs, alterations or maintenance by Landlord, Landlord shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement of rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction.

Tenant shall give immediate notice to Landlord upon its discovery of accidents in the Demised Premises.

Section 12.03. (a). If in this Lease it is provided that Landlord's consent or approval as to any matter will not be unreasonably withheld, and it is established by a court or body having final jurisdiction thereover that Landlord has been unreasonable, the only effect of such finding shall be that Landlord shall be deemed to have given its consent or approval; but Landlord shall not be liable to Tenant in any respect for money damages by reason of withholding its consent.

(b). If there is a dispute between Landlord and Tenant under Sections 5.01 or 11.05 relating to the reasonableness of the withholding of a consent or approval by Landlord, Tenant may, at its option, as its sole and exclusive remedy, submit such dispute to arbitration in the City of New York under the Expedited Procedures provisions of the Commercial Arbitration Rules of the American Arbitration Association or any successor (the "AAA") (presently Rules E-1 through E-10 and, to the extent applicable, Section R-19); provided, however, that with respect to any such arbitration, (i) the list of arbitrators referred to in Rule E-5 shall be returned within five (5) days from the date of mailing; (ii) the parties shall notify the AAA by telephone, within four (4) days of any objections to the arbitrator appointed and will have no right to object if the arbitrator so appointed was on the list submitted by the AAA and was not objected to in accordance with Rule E-5; (iii) the Notice of hearing referred to in Rule E-8 shall be four (4) days in advance of the hearing; (iv) the hearing shall beheld within seven (7) days after the appointment of the arbitrator; (v) the arbitrator shall have no right to award damages; and (vi) the decision and award of the arbitrator shall be final and conclusive on the parties. The sole issue to be submitted to the arbitrator, which shall be included as part of his oath, shall be the reasonableness of Landlord's determination to withhold consent or approval under the provisions of this Lease. The arbitrators conducting any arbitration shall be bound by the provisions of this Lease and shall not have the right or power to consider, determine or resolve any other issue or dispute between the parties, or to add to, subtract from, or otherwise modify such provisions. Landlord and Tenant agree to sign all documents and to do all other things necessary to submit any such matter to arbitration upon request of the other and further agree to, and hereby do, waive any and all rights they or either of them may at any time have to revoke their agreement hereunder to submit to arbitration and to abide by the decision rendered thereunder. Each of the arbitrators shall have at least ten (10) years' experience in the business of managing real estate or acting as a real estate broker with first-class office buildings located in Manhattan. Each party hereunder

24