initially shall pay its own costs, fees and expenses in connection with any arbitration or other action or proceeding brought under this Section 12.03, and the expenses and fees of the arbitrators selected initially shall be shared equally by Landlord and tenant, provided, however, that the losing party shall reimburse the prevailing party for its reasonable expenses paid to the arbitrators and unrelated third parties in connection with the foregoing. Notwithstanding any contrary provisions hereof, if Tenant shall submit such dispute to arbitration, then Landlord and Tenant agree that (i) the arbitrators may not award or recommend any damages to be paid by either party, and (ii) in no event shall either party be liable for, nor be entitled to recover, any damages.

## ARTICLE 13

## Moving of Heavy Equipment

Tenant shall not move any safe, heavy equipment or bulky matter in or out of the North Building without Landlord's written consent, which shall not be unreasonably withheld. If the movement of such items requires special handling, Tenant agrees to employ only persons holding a Master Rigger's License to do said work and all such work shall be done in full compliance with applicable Governmental Requirements. All such movements shall be made during hours which will least interfere with the normal operations of the North Building or the Building Project, and all damage caused by such movement shall be promptly repaired by Tenant at Tenant's expense.

## ARTICLE 14

## Condemnation

Section 14.01. In the event that ten (10%) percent or more of the Demised Premises shall be condemned or taken in any manner for any public or quasi-public use, this Lease and the term and estate hereby granted shall forthwith cease and terminate as of the date of vesting of title. In the event that less than ten (10)% percent of the Demised Premises shall be so condemned or taken, then, effective as of the date of vesting of title, the minimum rent and additional rent hereunder for such part shall be equitably abated and this Lease shall continue as to such part not so taken. In the event that less than ten (10%) percent of the North Building shall be so condemned or taken, then (a) if substantial structural alteration or reconstruction of the North Building shall, in the reasonable opinion of Landlord, be necessary or appropriate as a result of such condemnation or taking (whether or not the Demised Premises be affected), Landlord may, at its option, terminate this Lease and the term and estate hereby granted as of the date of such vesting of title by notifying Tenant in writing of such termination within sixty (60) days following the date on which Landlord shall have received notice of the vesting of title, or (b) if Landlord does

25

not elect to terminate this Lease, as aforesaid, this Lease shall be and remain unaffected by such condemnation or taking, except that the minimum rent and additional rent shall be abated to the extent, if any, hereinbefore provided. In the event that only a part of the Demised Premises shall be so condemned or taken and this Lease and the term and estate hereby granted are not terminated as hereinbefore provided, Landlord, out of the portion of the award allocated for such purpose (but in any case subject to the provisions of any mortgage then encumbering the Building Project) and to the extent such award is sufficient, will restore with reasonable diligence the remaining structural portions of the Demised Premises as nearly as practicable to the same condition as it was in prior to such condemnation or taking.

Section 14.02.    In the event that more than twenty-five (25%) percent of the leaseable area of the Building Project shall be so condemned or taken, or if more than twenty-five (25%) of the parking facilities in the Building Project shall be so condemned or taken, then, in any such event, Landlord may, at its own option, terminate this Lease as of the date of such vesting of title by notifying Tenant in writing of such termination within sixty (60) days following the date on which Landlord shall have received notice of the vesting of title.

Section 14.03.    In the event of termination in any of the cases hereinabove provided, this Lease and the term and estate hereby granted shall expire as of the date of such termination with the same effect as if that were the Expiration Date and the rent hereunder shall be apportioned as of such date.

Section 14.04.    In the event of any condemnation or taking hereinabove mentioned of all or a part of the North  Building, the parking facilities or the Building Project, Landlord shall be entitled to receive the entire award in the condemnation proceeding, including any award made for the value of the estate vested by this Lease in Tenant, and Tenant hereby expressly assigns to Landlord any and all right, title and interest of Tenant now or hereafter arising in or to any such award or any part thereof, and Tenant shall be entitled to receive no part of such award. Notwithstanding the foregoing, Tenant may make a separate claim for Tenant's moveable trade fixtures, the undepreciated cost of the improvements made by Tenant at its expense and moving expenses, provided the same shall not affect or reduce Landlord's award.

ARTICLE 15

Entry, Right to Change Public Portions of the Building Project
or the North Building

Section 15.01.    Upon reasonable prior notice (except without notice in an emergency), Tenant shall permit Landlord to erect, use and maintain pipes and conduits concealed in and through the walls, within the ceiling or below the floors of the Demised Premises. Upon reasonable prior written notice (except without notice in an emergency), Landlord, or its agents or designee shall have the right to enter the Demised Premises for the purpose of making such repairs or alterations as Landlord shall be required or shall have the right to make under the provisions of this Lease; and shall also have the right to enter the Demised Premises for the purpose of inspecting them or exhibiting them to prospective purchasers or lessees of the North Building or the Building Project or to prospective mortgagees or to prospective assignees of any such mortgagees. Landlord shall, during the progress of any work in the Demised Premises pursuant to this Section 15.01, be allowed to take all material reasonably necessary to complete such work into and upon the Demised Premises that may be required for the repairs or alterations above mentioned without the same constituting an eviction of Tenant in whole or in part and the rent reserved shall in no wise abate, except as otherwise provided in this Lease, while said repairs or alterations are being made. Landlord shall use reasonable efforts to perform any such work in a manner to minimize interference with the normal conduct of Tenant's business, provided Landlord shall not be required to employ overtime or premium labor. Landlord, at its expense, shall repair any damage to the Demised Premises caused by Landlord's entry into the Demised Premises pursuant to this Section 5.01.

Section 15.02.    During the fifteen (15) months prior to the expiration of the term of this Lease, Landlord may exhibit the Demised Premises to prospective tenants.

Section 15.03.    Upon prior reasonable notice to Tenant (except without notice in an emergency), Landlord shall have the right at any time without thereby creating an actual or constructive eviction or incurring any liability to Tenant therefor, to make such changes to the Common Area of the Building Project as Landlord shall, from time to time, deem to be desirable, and to change the arrangement or location of such of the following as are not contained within the Demised Premises: entrances, passageways, doors and doorways, corridors, elevators, stairs, toilets, and other like public service portions of the North Building, provided such changes do not unreasonably interfere with Tenant's use of and access to the Demised Premises and Common Area; and to put so-called "solar film" or other energy-saving installations on the inside and outside of the windows. All parts (except surfaces facing the interior of the Demised Premises) of all walls, windows and doors bounding the Demised Premises (including exterior North Building walls, exterior core corridor walls, exterior doors and entrances), all space in or adjacent to the Demised Premises used for shafts, stacks, stairways, chutes, pipes, conduits, ducts, fan

rooms, heating, air cooling, plumbing and other mechanical facilities, service closets and other North Building facilities are not part of the Demised Premises and Landlord shall have the reasonable use thereof, as well as access thereto through the Demised Premises, upon reasonable prior notice (except without notice in an emergency), for the purposes of operation, maintenance, alteration and repair. Landlord shall use reasonable efforts to perform any such work in a manner to minimize interference with the normal conduct of Tenant's business, provided Landlord shall not be required to employ overtime or premium labor. Landlord, at its expense, shall repair any damage to the Demised Premises caused by Landlord's entry into the Demised Premises pursuant to this Section 15.03.

Section 15.04.   Landlord shall have the right at any time to name the Building Project and/or any of the Buildings therein as it desires and to change any and all such names at any time thereafter, except for the names of any of the parties listed in Section 15.05.

Section 15.05.   So long as the herein named Tenant then occupies not less than 89,000 rentable square feet of the Demised Premises, Landlord agrees not to directly lease any space in the North Building to any of the following direct competitors doing business in the mortgage industry during the initial term and any Renewal Term (as hereinafter defined): (i) Residential Mortgage Assistance Enterprises, LLC; (ii) New Century Financial, (iii) Franklin Financial, (iv) Washington Mutual Home Loans, (v) Option One Mortgage, (vi) Countrywide Home Lending, (vii) Encore Credit Corporation, (viii) Fremont Investments and Loan, (ix) HFC and (x) affiliates of any of the foregoing, e.g., Decision One.

# ARTICLE 16

## Conditional Limitations, Etc.

Section 16.01.   If at any time during the term of this Lease:

(a)    Tenant shall file a petition in bankruptcy or insolvency or for reorganization or arrangement or for the appointment of a receiver of all or a portion of Tenant's property, or

(b)    Any petition of the kind referred to in subdivision (a) of this Section shall be filed against Tenant and such petition shall not be vacated, discharged or withdrawn within ninety (90) days, or

(c)    Tenant shall be adjudicated a bankrupt by any court, or

28

(d)    Tenant shall make an assignment for the benefit of creditors, or

(e)    a permanent receiver shall be appointed for the property of Tenant by order of a court of competent jurisdiction by reason of the insolvency of Tenant (except where such receiver shall be appointed in an involuntary proceeding, if he shall not be withdrawn within ninety (90) days after the date of his appointment),

then Landlord, at Landlord's option, may terminate this Lease on five (5) days' notice to Tenant, and upon such termination, Tenant shall quit and surrender the Demised Premises to Landlord.

Section 16.02    (a)    If Tenant assumes this Lease and proposes to assign the same pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") to any person or entity who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then notice of such proposed assignment, setting forth (i) the name and address of such person, (ii) all of the terms and conditions of such offer, and (iii) the adequate assurance to be provided Landlord to assure such person's future performance under the Lease, including, without limitation, the assurance referred to in section 365(b)(1) of the Bankruptcy Code, shall be given to Landlord by Tenant not later than twenty (20) days after receipt by Tenant but in no event later than ten (10) days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option, to be exercised by notice to Tenant given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person, less any brokerage commissions which may be payable out of the consideration to be paid by such person for the assignment of this Lease.

(b)    If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, any and all monies or other considerations payable or otherwise delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies or other considerations constituting Landlord's Property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid to Landlord.

29

(c)    Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code, shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall upon demand execute and deliver to Landlord an instrument confirming such assumption.

(d)    Nothing contained in this Section shall, in any way, constitute a waiver of the provisions of this Lease relating to assignment. Tenant shall not, by virtue of this Section, have any further rights relating to assignment other than those granted in the Bankruptcy Code.

(e)    Notwithstanding anything in this Lease to the contrary, all amounts payable by Tenant to or on behalf of Landlord under this Lease, whether or not expressly denominated as rent, shall constitute rent for the purposes of Section 502(b)(6) of the Bankruptcy Code.

(f)    The term "Tenant" as used in this Section includes any guarantor or any trustee, debtor in possession, receiver, custodian or other similar officer.

Section 16.03.    If this Lease shall terminate pursuant to the provisions of Section 16.01:

(a)    Landlord shall be entitled to recover from Tenant arrears in minimum rent and additional rent and, in addition thereto as liquidated damages, an amount equal to the difference between the minimum rent and additional rent for the unexpired portion of the term of this Lease which had been in force immediately prior to the termination effected under Section 16.01 of this Article and the fair and the reasonable rental value of the Demised Premises, on the date of termination, for the same period, both discounted at the rate of eight (8%) percent per annum to the date of termination; or

(b)    Landlord shall be entitled to recover from Tenant arrears in minimum rent and additional rent and, in addition thereto as liquidated damages, an amount equal to the maximum allowed by statute or rule of law in effect at the time when and governing the proceedings in which such damages are to be proved, whether or not such amount be greater or less than the amount referred to in subdivision (a) of this Section.

Section 16.04.    (a)    If Tenant shall fail to make any payment of any minimum rent or additional rent when the same becomes due and payable, or if more than 29,000 rentable square feet of the Demised Premises become deserted, or if Tenant shall fail to cancel or discharge any

mechanic's or other lien as provided in Section 17.02, and if any such default shall continue for a period of ten (10) days after written notice thereof by Landlord, or

(b)    If Tenant shall be in default in the performance of any of the other terms, covenants and conditions of this Lease, and if any such default shall not have been remedied within thirty (30) days after written notice by Landlord to Tenant specifying such default and requiring it to be remedied; or where such default reasonably cannot be remedied within such period of thirty (30) days, if Tenant shall not have commenced the remedying thereof within such period of time and shall not be proceeding with due diligence to remedy it,

then Landlord, at Landlord's election, may terminate this Lease on five (5) business days' notice to Tenant, and upon such termination Tenant shall quit and surrender the Demised Premises to Landlord.

Section 16.05.    If this Lease shall terminate as provided in this Article or if Tenant shall be in default in the payment of minimum rent or additional rent when the same become due and payable and such default shall continue for a period of ten (10) days after written notice by Landlord to Tenant,

(a)    Landlord may re-enter and resume possession of the Demised Premises and remove all persons and property therefrom either by summary dispossess proceedings or by a suitable action or proceeding, at law or in equity, or by force or otherwise, without being liable for any damages therefor, and

(b)    Landlord may re-let the whole or any part of the Demised Premises for a period equal to, greater or less than the remainder of the then term of this Lease, at such rental and upon such terms and conditions as Landlord shall deem reasonable to any tenant it may deem suitable and for any use and purpose it may deem appropriate. Landlord shall not be liable in any respect for failure to re-let the Demised Premises or, in the event of such re-letting, for failure to collect the rent thereunder and any sums received by Landlord on a re-letting in excess of the rent reserved in this Lease shall belong to Landlord.

Section 16.06.    If this Lease shall terminate as provided in this Article or by summary proceedings (except as to any termination under Section 16.01), Landlord shall be entitled to recover from Tenant as damages, in addition to arrears in minimum rent and additional rent,

(a)    an amount equal to (i) all expenses incurred by Landlord in recovering possession of the Demised Premises and in connection with

31

the re-letting of the Demised Premises, including, without limitation, the cost of repairing, renovating or remodeling the Demised Premises, (ii) the cost of performing any work required to be done by Tenant under this Lease, (iii) the cost of placing the Demised Premises in the same condition as that in which Tenant is required to surrender them to Landlord under this Lease, and (iv) all brokers' commissions and legal fees incurred by Landlord in re-letting the Demised Premises, which amounts set forth in this subdivision (a) shall be due and payable by Tenant to Landlord at such time or times as they shall have been incurred; and

(b)     an amount equal to the deficiency between the minimum rent and additional rent which would have become due and payable had this Lease not terminated and the net amount, if any, of rent collected by Landlord on re-letting the Demised Premises. The amounts specified in this subdivision shall be due and payable by Tenant on the several days on which such minimum rent and additional rent would have become due and payable had this Lease not terminated. Tenant consents that Landlord shall be entitled to institute separate suits or actions or proceedings for the recovery of such amount or amounts, and Tenant hereby waives the right to enforce or assert the rule against splitting a cause of action as a defense thereto.

Landlord, at its election, which shall be exercised by the service of a notice on Tenant, at any time after such termination of this Lease, may collect from Tenant and Tenant shall pay, in lieu of the sums becoming due, under the provisions of subdivision (b) of this Section, an amount equal to the difference between the minimum rent and additional rent which would have become due and payable had this Lease not terminated (from the date of the service of such notice to the end of the term of this Lease which had been in force immediately prior to any termination effected under this Article) and the then fair and reasonable rental value of the Demised Premises for the same period, both discounted to the date of the service of such notice at the rate of eight (8%) percent per annum.

Section 16.07.   Tenant, for itself and for all persons claiming through or under it, hereby waives any and all rights which are or may be conferred upon Tenant by any present or future law to redeem the Demised Premises after a warrant to dispossess shall have been issued or after judgment in an action of ejectment shall have been made and entered.

Section 16.08.   The words "re-enter" and "re-entry", as used in this Article, are not restricted to their technical legal meanings.

Section 16.09.   Landlord shall not be required to give any notice of its intention to re-enter, except as otherwise provided in this Lease.

Section 16.10.    In any action or proceeding brought by Landlord against Tenant, predicated on a default in the payment of minimum rent or additional rent, Tenant shall not have the right to and shall not interpose any set-off or counterclaim of any kind whatsoever, other than a claim which would be legally barred for failure to raise as a counterclaim in such action or proceeding. If Tenant has any claim, Tenant shall be entitled only to bring an independent action therefor; and if such independent action is brought by Tenant, Tenant shall not be entitled to and shall not consolidate it with any pending action or proceeding brought by Landlord against Tenant for a default in the payment of minimum rent or additional rent.

## ARTICLE 17

## Mechanic's Liens

Section 17.01.    If, subject to and notwithstanding Landlord's consent as required under this Lease, Tenant shall cause any changes, alterations, additions, improvements, installations or repairs to be made to or at the Demised Premises or shall cause any labor to be performed or material to be furnished in connection therewith, neither Landlord nor the Demised Premises, under any circumstances, shall be liable for the payment of any expense incurred or for the value of any work done or material furnished, and all such changes, alterations, additions, improvements, installations and repairs and labor and material shall be made, furnished and performed upon Tenant's credit alone and at Tenant's expense, and Tenant shall be solely and wholly responsible to contractors, laborers, and materialmen furnishing and performing such labor and material. Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, to any contractor, laborer or materialman to furnish to perform any such labor or material.

Section 17.02.    If, because of any act or omission (or alleged act or omission) of Tenant any mechanic's or other lien, charge or order for the payment of money shall be filed against the Demised Premises, the Building Project or the North Building or Landlord's estate as tenant under any ground or underlying lease (whether or not such lien, charge or order is valid or enforceable as such), for work claimed to have been for, or materials furnished to, Tenant, Tenant, at Tenant's expense, shall cause it to be cancelled or discharged of record by bonding or otherwise within thirty (30) days after such filing; provided, however. that Tenant shall have the right to contest the validity on account of any such lien and Tenant shall indemnify Landlord against and save Landlord harmless from and shall pay all reasonable costs, expenses, losses, fines and penalties, including, without limitation, reasonable attorneys' fees resulting therefrom.

33

## ARTICLE 18

### Landlord's and Tenant's Right to Perform Obligations

Section 18.01.    If Tenant shall default in the performance of any of the terms or covenants and conditions of this Lease, Landlord, without being under any obligation to do so and without hereby waiving such default, may remedy such default for the account and at the expense of Tenant. Any payment made or expense incurred by Landlord for such purpose (including, but not limited to, reasonable attorneys' fees) with interest at the maximum legal rate, shall be deemed to be additional rent hereunder and shall be paid by Tenant to Landlord on demand, or at Landlord's election, added to any subsequent installment or installments of minimum rent.

Section 18.02.    If Landlord shall fail to perform any repair or maintenance obligation required to be performed by Landlord in the Demised Premises pursuant to the provisions of this Lease, then Tenant shall give Landlord written notice (the "Repair Notice") stating the repair or maintenance obligation which affects the Demised Premises. If Landlord fails to remedy the condition set forth in the Repair Notice within thirty (30) days after such Repair Notice is given, then, to the extent such repair or maintenance may be performed by Tenant solely within the Demised Premises, Tenant may perform the same. Landlord shall reimburse Tenant for the reasonable actual costs and expenses of performing the same, within twenty (20) days after receipt from Tenant of paid receipts therefor, together with waivers of liens with respect thereto.

## ARTICLE 19

### Covenant of Quiet Enjoyment

Landlord covenants that upon Tenant paying the minimum rent and additional rent and observing and performing all the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the Demised Premises, subject nevertheless to the terms and conditions of this Lease.

## ARTICLE 20

### Excavation

In the event that construction is to be commenced or an excavation is made or authorized for building or other purposes upon land adjacent to the North Building,

34

Tenant shall, if necessary, afford to the person or persons causing or authorized to commence construction or cause such excavation or to engage in such other purpose, license to enter upon the Demised Premises after reasonable prior notice (but without notice in an emergency) for the purpose of doing such work as shall reasonably be necessary to protect or preserve the North Building, from injury or damage and to support the North Building and any new structure to be built by proper foundations, pinning and/or underpinning, or otherwise. In no event shall any such construction or excavation, while in progress or after completion, unreasonably adversely affect any of Tenant's access to or parking in connection with the Demised Premises or its right to quiet enjoyment.

## ARTICLE 21

### Services and Equipment

Section 21.01.   Landlord shall, at its cost and expense:

(a)    Provide operatorless passenger elevator service Mondays through Fridays from 8:00 A.M. to 6:00 P.M., holidays excepted. A passenger elevator will be available at all other times. A freight elevator shall be available Mondays through Fridays, holidays excepted, only from 8:00 to 6:00 P.M. The freight elevator shall be available on a "first come, first served" basis during the said days and hours and on a reservation "first come, first served" basis other than on said days and hours at Landlord's customary charges therefor. Deliveries to Tenant from all vendors, including but not limited to Federal Express and UPS, will be only from the freight elevator directly to the floors of the Demised Premises.

(b)    Maintain and repair the North Building standard heating, ventilating and air conditioning system servicing the Demised Premises (the "HVAC System") installed by Landlord, except for those repairs which are the obligation of Tenant pursuant to Article 6 of this Lease. The HVAC System will be operated by Landlord as required by law, and for the comfortable occupancy of the Demised Premises (as determined by Landlord) during the applicable seasons on Mondays through Fridays, holidays excepted, from 8:00 A.M. to 6:00 P.M. Tenant shall use commercially reasonable efforts to draw and close the draperies or blinds for the windows of the Demised Premises whenever the HVAC System is in operation and the position of the sun so requires and shall, at all times, cooperate fully with Landlord and abide by all of the Rules and Regulations which Landlord may reasonably prescribe for the proper functioning of the HVAC System. Landlord agrees to operate the HVAC System servicing the Demised Premises in accordance with their design criteria unless energy and/or water conservation programs,

guidelines or laws and/or requirements of public authorities, shall provide for any reduction in operations below said design criteria in which case such equipment shall be operated so as to provide reduced service in accordance therewith. Landlord will not be responsible for the failure of the HVAC System if such failure directly results from the occupancy of the Demised Premises by more than an average of one (1) person for each one hundred (100) square feet in any separate room or area or if Tenant shall install and operate non-standard machines, incandescent lighting and appliances which cause the total connected electrical load for the Demised Premises to be in excess of the North Building's electrical specifications for the Demised Premises, as set forth in Section 24.03. If Tenant shall occupy the Demised Premises at an occupancy rate of greater than as set forth above, or if the total connected electrical load is in excess of the North Building's electrical specifications for the Demised Premises, as set forth in Section 24.03, or if Tenant's partitions shall be arranged in such a way as to interfere with the normal operation of the HVAC System, Landlord may elect to make changes to the HVAC System or the ducts through which it operates required by reason thereof, and the cost thereof shall be reimbursed by Tenant to Landlord, as additional rent, within twenty (20) days after presentation of a bill therefor. Subject to Tenant's reasonable security practices (provided the same does not unreasonably affect Landlord's access). Landlord, throughout the term, shall have free access to all mechanical installations of Landlord, including but not limited to air-cooling, fan, ventilating and machine rooms and electrical closets, and Tenant shall not construct partitions or other obstructions that may interfere with Landlord's free access thereto, or interfere with the moving of Landlord's equipment to and from the enclosures containing said installations. Neither Tenant nor any person or entity within Tenant's control shall at any time enter the said enclosures or tamper with, adjust, touch or otherwise in any manner affect said mechanical installations.

(c)     Provide Building standard cleaning services in Tenant's office space and public portions of the North Building, except no services shall be performed Saturdays, Sundays and holidays, all in accordance with Schedule E attached hereto. If, however, any additional cleaning of the Demised Premises is to be done by Tenant, it shall be done at Tenant's sole expense, in a manner reasonably satisfactory to Landlord and no one other than persons reasonably approved by Landlord shall be permitted to enter the Demised Premises or the North Building for such purpose. Tenant, at its own cost, may utilize its own employees or outside contractors to perform additional cleaning services in the Demised Premises, provided such employees or outside contractors do not cause any labor disruption, dispute or disturbance in or around the Building or violate Landlord's union contracts affecting the Project Building. If Tenant shall require additional cleaning services, Tenant may award a contract for such services to any contractor that is reasonably approved by Landlord; provided however, that prior to

making such award, Tenant shall inform Landlord of the terms upon which such contractor shall provide such additional cleaning services and, in the event that Landlord's designated contractor can provide such additional cleaning services on equal or better terms, Tenant shall award such contract to Landlord's designated contractor. Tenant shall pay for the cost of the services performed by such designated contractor within twenty (20) days after being billed. Tenant shall pay to Landlord the cost of removal of any of Tenant's refuse and rubbish from the Demised Premises and the North Building (i) to the extent that the same exceeds the customary amount of refuse and rubbish usually attendant upon the use of such Demised Premises as offices, and (ii) related to or derived from the preparation and unreasonable consumption of food or drink. Bills for the same shall be rendered by Landlord to Tenant at such time as Landlord may elect and shall be due and payable as additional rent within twenty (20) days after the time rendered. Tenant, at Tenant's expense, shall cause the Demised Premises to be treated against infestation by vermin, rodents or roaches, whenever there is evidence of any infestation caused by Tenant, otherwise such treatment shall be at the sole cost and expense of Landlord. Tenant shall not permit any person to enter the Demised Premises or the North Building for the purpose of providing such extermination services, unless such persons have been reasonably approved by Landlord. If so requested by Landlord, Tenant shall store any refuse generated by the consumption of food or beverages on the Demised Premises in a cold box or similar facility.

(d)     Furnish hot and cold water for lavatory and drinking purposes. If Tenant requires, uses or consumes water in more than de minimis amounts for any other purposes, Landlord may install a meter or meters or other means to measure Tenant's water consumption, and Tenant shall reimburse Landlord for the cost of the meter or meters and the installation thereof, and shall pay for the maintenance of said meter equipment and/or pay Landlord's cost of other means of measuring such water consumption by Tenant. Tenant shall pay to Landlord, within twenty (20) days after receipt of a bill the cost of all water consumed as measured by said meter or meters or as otherwise measured, including sewer rents.

(e)     Provide a roving security guard throughout the Building Project at all times. Landlord shall provide for a card key access security system to the North Building and Landlord shall provide a key card to each employee of Tenant, provided Tenant shall pay to Landlord the then building standard rate charged by Landlord for such key card(s), provided such rate shall not exceed the rate charged to the tenant in the Building Project. Such rate is currently $15.00 per card, subject to future changes in such rate applicable to all tenants in the Building Project.

(f)     If Tenant shall require and request any of the foregoing services at times other than above provided, and if such request is made at least twenty-four (24) hours prior to the time when such additional services are required, Landlord will provide them and Tenant shall pay to Landlord promptly thereafter the charges therefor at the then North Building standard rate charged to other tenants in the North Building. Notwithstanding the foregoing, Landlord will supply after-hours HVAC services to Tenant, at a charge to the herein named Tenant only, of $150.00 per hour, except there shall be a four (4) hour minimum on Saturdays, Sundays and holidays or other than as the continuation of a business day.

Section 21.02.    Holidays shall be deemed to mean all federal holidays, state holidays and Building Service Employees Union Contract holidays.

Section 21.03.    Landlord reserves the right to interrupt, curtail or suspend the services required to be furnished by Landlord under this Lease when necessary by reason of accident, emergency, mechanical breakdown or when required by any law, order or regulation of any Federal, State, County or Municipal authority, or for any other cause beyond the control of Landlord. Landlord shall use due diligence to complete all required repairs or other necessary work as quickly as possible so that Tenant's inconvenience resulting therefrom may be for as short a period of time as circumstances will reasonably permit. Tenant shall not be entitled to nor shall Tenant make claim for any diminution or abatement of minimum rent or additional rent or other compensation, nor shall this Lease or any of the obligations of Tenant be affected or reduced by reason of such interruption, curtailment, suspension, work or inconvenience.

Section 21.04.    If Tenant shall request Landlord to furnish any services in addition to those hereinabove provided or perform any work not required under this Lease, and Landlord agrees to furnish and/or perform the same, Tenant shall pay to Landlord promptly thereafter the charges therefor, which charges are deemed to be additional rent and payable as such.

Section 21.05.    Tenant shall have access to the Demised Premises 24 hours per day, 7 days per week, 365 days per year, subject to emergencies, police power and the provisions of Article 35.

Section 21.06.    Notwithstanding anything to the contrary contained in this Lease, if Landlord shall fail to provide neither elevator nor escalator services, or heating, ventilating, air conditioning or electrical services or perform work or repairs, as provided in this Lease (collectively, an "Interruption"), and such Interruption shall materially impair the customary operation of Tenant's business in all or any part of the Demised Premises (other than a de minimis part), and if (i) such Interruption shall continue for a period in excess of twenty (20) consecutive days following receipt by Landlord of notice from Tenant describing such Interruption and (ii) such Interruption shall not have been caused by an act or omission in violation of this Lease by or the negligence of Tenant, or of Tenant agents,

38

servants, employees or contractors (an Interruption that satisfies all of the foregoing conditions being referred to hereinafter as a "Material Interruption"), then Tenant shall be entitled to an abatement of the minimum rent and escalation rent payable under Article 22 (such abatement to be prorated if only a part of the Demised Premises shall be so affected by such Material Interruption),which shall begin on the 21st consecutive day of such Material Interruption and shall end upon the date such Material Interruption has been terminated.

## ARTICLE 22

## Escalation

Section 22.01.   Taxes. Tenant shall pay to Landlord, as additional rent, tax escalation in accordance with this Section:

(a)   Definitions:   For the purpose of this Section, the following definitions shall apply:

(i) The term "Tax Base Factor" shall mean the average of the Real Estate Taxes payable for the Building Project for the County of Westchester for the calendar year from January 1, 2003 to December 31, 2003 (the "County Tax") and the City of White Plains and White Plains School District for the fiscal year beginning July 1, 2003 to June 30, 2004 (the "City and School Tax").

(ii) The term "Building Project" shall mean the parcel of Land described in Schedule C of this Lease with all improvements erected thereon.

(iii)   The term "Comparative Tax Year" shall mean the County Tax for the real estate calendar tax year and the City and School Tax for the fiscal tax year, respectively, following the Tax Base Factor and each subsequent County Tax real estate calendar tax year and City and School Tax fiscal tax year, respectively.   If the present use of the real estate calendar tax year shall hereafter be changed, then such changed tax year shall be used with appropriate adjustment for the transition.

(iv)   The term "Real Estate Taxes" shall mean the total of all taxes and special or other assessments

39

levied, assessed or imposed at any time by any governmental authority: (a) upon or against the Building Project, and (b) in connection with the receipt of income or rents from the Building Project to the extent that same shall be in lieu of all or a portion of any of the aforesaid taxes or assessments, or additions or increases thereof. Income, franchise, rent, gross receipts, transfer, inheritance, corporate, mortgage recording or capital stock taxes of Landlord, and penalties or interest thereon, shall be excluded from "Real Estate Taxes" for the purposes hereof. If, due to a future change in the method of taxation or in the taxing authority, or for any other reason, a franchise, income, transit, profit or other tax or governmental imposition, however designated, shall be levied against Landlord in substitution in whole or in part for the Real Estate Taxes, or in lieu of or addition to or increase of Real Estate Taxes, then such franchise, income, transit, profit or other tax or governmental imposition shall be included within "Real Estate Taxes." Tenant acknowledges that the Tax Escalation Payment (as hereinafter defined) constitutes a method by which Landlord is seeking to compensate for increases in expenses and that the Tax Escalation Payment shall be calculated and paid by Tenant to Landlord whether or not Landlord is delinquent in the payment of Real Estate Taxes. Tenant hereby agrees that any payments made in accordance with that certain Pilot Agreement dated April 20, 1998 affecting the Building Project, or any similar type of agreement, shall constitute Real Estate Taxes within the meaning of this clause (iv).

(v) The term "the Percentage" for purposes of computing tax escalation, shall mean 21.628%.

(b) (i) In the event that the Real Estate Taxes payable for any Comparative Tax Year shall exceed the Tax Base Factor, Tenant shall pay to Landlord, as additional rent for such comparative tax year, an amount for tax escalation ("Tax Escalation Payment") equal to the Percentage of the excess. Before or after the start of each Comparative Tax Year, Landlord shall furnish to Tenant a statement of the Tax Escalation Payment payable for such Comparative Tax Year, together with a copy of the relevant tax bills. Tenant shall make its aforesaid Tax Escalation Payment to Landlord, in installments in the same manner and not later than thirty (30) days after Tenant's receipt of Landlord's statement. If a statement is furnished to Tenant after the commencement of the Comparative Tax Year in respect of which such statement

40

is rendered, Tenant shall, within twenty (20) days thereafter, pay to Landlord an amount equal to those installments of the total Tax Escalation Payment then due. If, during the term of this Lease, Real Estate Taxes are required to be paid, in full or in monthly or other installments, on any other date or dates than as presently required, or if Landlord shall be required to make monthly deposits of Real Estate Taxes to the holder of any mortgage, then Tenant's Tax Escalation Payment(s) shall be correspondingly adjusted so that the same are due to Landlord in corresponding installments not later than thirty (30) days prior to the last date on which the applicable installment of such Real Estate Taxes shall be due and payable to the governmental authority or such mortgagee.

(ii) If in any tax certiorari proceeding regarding Real Estate Taxes payable for any Comparative Tax Year or in otherwise establishing such taxes, Landlord has incurred expenses for legal and/or consulting services rendered in applying for, negotiating or obtaining a reduction of the assessment upon which the Real Estate Taxes are predicated, Tenant shall pay an amount equal to the Percentage of such expenses. Landlord agrees that it will throughout the term use all commercially reasonable efforts to seek a reduction in Pilot Agreement payments, property tax assessments and tax bills so as to minimize the amount of any Tax Escalation Payment hereunder.

(iii) The statements of the Tax Escalation Payment to be furnished by Landlord as provided above shall constitute a final determination as between Landlord and Tenant of the Tax Escalation Payment for the periods represented thereby, except for mathematical error in computation. Pending any disputes by Tenant as to the correctness of such statements, Tenant shall pay to Landlord the amount of the Tax Escalation Payment shown on the statements.

(iv) In no event shall (i) the fixed minimum rent under this Lease be reduced by virtue of this Section 22.01, or (ii) any Tax Escalation Payment include Real Estate Taxes for any period other than a period which is a part of the Lease term (including applicable extensions thereof).

(v) Upon the date of any expiration or termination of this Lease, whether the same be the date hereinabove set

41

forth for the expiration of the term or any prior or subsequent date, a proportionate share of the Tax Escalation Payment for the Comparative Tax Year during which such expiration or termination occurs shall be payable by Tenant to Landlord within twenty (20) days after Tenant's receipt of Landlord's statement for such proportionate share of the Tax Escalation Payment, if it was not theretofore already billed and paid, or due and payable by Landlord to Tenant if the amount paid by Tenant exceeded such proportionate share. The said proportionate share shall be based upon the length of time that this Lease shall have been in existence during such Comparative Tax Year.  Prior to or promptly after said expiration or termination, Landlord shall compute the Tax Escalation Payment due from or owed to Tenant, as aforesaid and Tenant shall promptly pay Landlord any amount unpaid. If Landlord shall receive a refund or a tax credit of any amount of Real Estate Taxes for any Comparative Tax Year for which Tenant has made a payment, Landlord shall pay to Tenant within fifteen (15) days of its receipt of such refund the Percentage of any such refund, less the Percentage of any legal fees and other expenses provided for in Section 22.01(b)(ii) to the extent the same have not theretofore been paid by Tenant.

(vi)    Landlord's and Tenant's obligations to make the adjustments referred to in subdivision (v) above shall survive any expiration or termination of this Lease.

(vii) Any delay or failure of Landlord in billing any Tax Escalation Payment hereinabove provided shall not constitute a waiver of or in any way impair the continuing obligation of Tenant to pay such Tax Escalation Payment hereunder.

Section 22.02.   Operating Expenses.   Tenant shall pay to Landlord, as additional rent, an expense escalation in accordance with this Section:

(a)    Definitions:   For the purpose of this Section, the following definitions shall apply:

(i) The term "Expense Base Factor" shall mean the average of the Expenses (as hereinafter defined) for the calendar years beginning January 1, 2003 and ending on December 31, 2003 and beginning January 1, 2004 and ending on December 31, 2004.

42

(ii) The term "comparative year" shall mean the calendar year January 1, 2004 to December 31, 2004 and each subsequent calendar year.

(iii)    The term "the Percentage", for purposes hereunder shall mean 21.628%.

(iv)    The term "Expenses" shall mean the total of all costs and expenses directly incurred or borne by Landlord with respect to the operation and maintenance of the Building Project whether performed by Landlord or by contractors for or on behalf of Landlord, including, but not limited to, the costs and expenses incurred for and with respect to all of the following:

1.    Labor Costs (as hereinafter defined) for the services of the following classes of employees:

(i) the superintendents for the Buildings and elevator operators and starters;

(ii) window    cleaners    and    miscellaneous handymen;

(iii)    cleaners, porters and janitors;

(iv)    watchmen, caretakers, security guards and persons engaged in patrolling the Building Project and the Buildings therein in connection with the security thereof; and

(v) carpenters,    engineers,    firemen,    mechanics, electricians and plumbers engaged in the operation, repair and maintenance of any part of the Buildings and building equipment.

The words "Labor Costs" as used herein shall mean: All expenses incurred by Landlord or on Landlord's behalf which are directly related to employment of personnel specified above, including, without limitation, wages, vacation pay and other compensation, social security, unemployment and other similar taxes, workmen's compensation insurance, disability benefits, pensions, hospitalization, retirement plans and group insurance, uniforms and working clothes and cleaning thereof.

2.    Common Area Costs (as hereinafter defined).

3.    Cost of materials and supplies for the Buildings.

43

4.    Cost of replacements for tools and equipment for the Buildings to the extent the same are not considered capital items as determined in accordance with generally accepted accounting principles.

5.    Amounts paid for accounting services in preparing the statements required to be delivered by Landlord under the provisions of this Article.

6.    Amounts charged to Landlord by independent contractors for services, materials and supplies furnished.

7.    Amounts charged to Landlord by independent contractors for window cleaning and cleaning and janitorial services for the Buildings.

8.    Premiums paid by Landlord for insurance for the Building Project.

9.    Cost of painting or otherwise decorating any part of the Buildings, excluding, however, any space contained therein which is leased to tenants.

10.    Holiday decorations for the public portions and the exterior of the Buildings and the Common Areas.

11.    Sales, use and excise taxes paid by Landlord on goods and services purchased or provided by Landlord to manage, operate and maintain the Building Project.

12.    License, permit and inspection fees.

13.    Reasonable legal fees and disbursements incurred in connection with routine management and operation of the Buildings (but not including legal fees relating to preparation or enforcement of space tenants' leases).

14.    Steam and other fuel, gas, water or other utilities required in connection with the operation and maintenance of the Buildings.

15.    Water charges and sewer rents.

16.    Air conditioning, ventilation and heating (including, without limitation, repairs and maintenance of heating, ventilating and air conditioning equipment).

44

17.    Redecorating the lobbies in the North Building, and when Tenant occupies part of the East Building, the East Building.

18.    An annual fee for management of the Building Project at an amount that would be charged in other first class office building complexes in the County of Westchester.

19.    Such other reasonable expenses and costs whether or not herein mentioned which would be construed as an operating expense by a reasonably prudent operator of comparable first class office building complexes in the County of Westchester.

The inclusion of any item in the definition of "Expenses" shall not be construed as requiring Landlord to perform any action or expend any sum unless Landlord is otherwise required to do so under any other provisions of the Lease.

Expenses shall not include the following:

A.    Taxes which are separately covered in Section 22.01.

B.    Expenses of painting and decorating the Demised Premises and the premises of other tenants.

C.    Depreciation of the Buildings.

D.    Subject to the provisions of subdivisions G, S, U and V below, the cost of capital improvements, except those which under generally accepted accounting principles are expensed or regarded as deferred expenses and except for capital expenditures required by law in effect after the Commencement Date, in either of which cases the cost thereof shall be included in Expenses for the comparative year in which the costs are incurred and subsequent comparative years, on a straight line basis, to the extent that such items are amortized over their useful lives as determined by generally accepted accounting principles, with an interest factor equal to the prime rate of Citibank, N.A. at the time of Landlord's having incurred said expenditure.

E.    Interest on debt and/or amortization payments or any other payments (unless such other payments are expressly otherwise included in items numbered 1 to 18 above) under any mortgage and rental under any ground or underlying lease.

F.    Landlord's income or franchise taxes.

45

G.    Repairs or other work occasioned by (i) fire, windstorm, or other casualty of the type which Landlord has insured (to the extent that Landlord has received insurance proceeds and provided that the amount of any deductible paid by Landlord shall be included in Operating Expenses), or (ii) the exercise of the right of eminent domain (to the extent that such repairs or other work are covered by the proceeds of the award, if any, received by Landlord);

H.    Leasing commissions, brochures, marketing supplies, attorneys' fees, costs, and disbursements and other expenses incurred in connection with negotiation of leases, lease amendments, subleases, assignments and other transactions with current or prospective tenants or other occupants of the Building Project;

I.    Costs, including permit, license and inspection costs, incurred with respect to the installation of tenant or other occupants' improvements in the Building Project or incurred in renovating or otherwise improving, decorating, painting or redecorating vacant space in the Building Project;

J.    Landlord's costs of electricity and other services sold or provided to tenants in the Building Project and for which Landlord is entitled to be reimbursed by such tenants as a separate additional charge or rental over and above the base rental or additional base rental payable under the lease with such tenant;

K.    General corporate overhead and general administrative expenses, including, without limitation, overhead and profit increment paid to subsidiaries or other affiliates of Landlord for services on or to the Building Project, to the extent only that the costs of such services exceed the competitive cost for such services rendered by persons or entities of similar skill, competence and experience;

L.    Advertising and promotional expenditures;

M.    Costs incurred in connection with the sale, financing, refinancing, mortgaging or sale of the Building Project or any part thereof, including brokerage commissions, attorneys' and accountants' fees, closing costs, title insurance premiums, transfer taxes and interest charges;

N.    Costs, fines, interest, penalties, legal fees or costs of litigation incurred due to the late payments of taxes, utility bills and other costs incurred by Landlord's failure to make such payments when due unless such failure is due to Landlord's good faith and reasonable efforts in contesting the amount of such payments;

46

O.    Costs incurred by Landlord for trustee's fees, partnership organizational and operational expenses and accounting, legal, financing, and other costs and fees to the extent relating to Landlord's general corporate overhead and general administrative expenses;

P.    The cost or expense of any additional or extraordinary services or benefits provided to other office tenants in the Building Project and not made available to Tenant;

Q.    Payments for rented equipment, the cost of which would constitute a capital expenditure if the equipment were purchased;

R.    Any fines or penalties incurred as a result of violation by Landlord of any Governmental Requirement;

S.    Expenses incurred by Landlord in order to correct any existing (as of the Commencement Date) violations of any in-effect and enforced Governmental Requirement, including without limitation the Americans with Disabilities Act of 1990 (as amended), the Federal Occupational Safety and Health Act of 1970 (as amended) and any of said laws, rules and regulations relating to environmental, health or safety matters;

T.    Acquisition costs for major sculptures, paintings, or other objects of art;

U.    Any cost or expense related to removal, cleaning, abatement or remediation of Hazardous Materials in or about all or part of the Building Project except to the extent the storage or release thereof is caused by the acts or omissions of Tenant or its agents, contractors or employees;

V.    Costs incurred by Landlord in connection with the correction of defects (including latent) in design and original construction of the Building Project;

W.    Unless covered by insurance deductible, any fines, costs, penalties or interest resulting from the negligence or willful misconduct of other tenants of the Building Project or Landlord, its agents, contractors or employees;

X.    Any costs, fees, dues, contributions or similar expenses for political or charitable organizations;

Y.    Unless covered by insurance deductible, costs incurred by Landlord due to the violation by Landlord or any tenant of the terms and conditions of any lease of space in the Building Project, including, without

47

limitation, attorneys' fees, costs and disbursements and other expenses incurred in connection with negotiations or disputes with tenants or other occupants of the Building Project or with prospective tenants (other than attorneys' fees, costs and disbursements and other expenses incurred by Landlord in seeking to enforce Building Project rules and regulations).

If Landlord shall purchase any item of capital equipment or make any capital expenditure which actually result in savings or reductions in Expenses, then the costs for same shall be included in Expenses. The cost of capital equipment or capital expenditures are so to be included in Expenses for the comparative year in which the costs are incurred and subsequent comparative years, on a straight line basis, to the extent that such items are amortized over their useful lives as determined by generally accepted accounting principles, with an interest factor equal to the prime rate of Citibank, N.A. If Landlord shall lease any such item of capital equipment which actually result in savings or reductions in Expenses, then the rentals and other costs paid pursuant to such leasing shall be included in Expenses for the comparative year in which they were incurred.

If during all or part of any comparative year (and the calendar years 2003 and 2004 whether or not the same is a comparative year), Landlord shall not furnish any particular item(s) of work or service (which would constitute an Expense hereunder) to those portions of the Building Project that were included for the purposes of establishing the Expense Payment, due to the fact that such portions are not occupied or leased, or such tenant is itself obtaining and providing such item of work or service, or for other reasons which would make the adjustment contemplated hereby appropriate, then, for the purposes of computing the Expense Payment hereunder, the amount of the Expenses for such item for such period shall be deemed to be increased by an amount equal to the additional operating and maintenance expenses which would reasonably have been incurred during such period by Landlord if it had at its own expense furnished such item of work or services to such portion of the Building Project. Notwithstanding the foregoing, for the purpose of this paragraph only, if for any comparative year, including the calendar years 2003 and 2004, less than 95% of the Building Project shall be occupied or leased, then for the purposes hereof, it will be deemed to be 95% leased notwithstanding that such actual percentage may be less than 95%.

(b)    1.  If the Expenses for any comparative year shall be greater than the Expense Base Factor, Tenant shall pay to Landlord, as additional rent for such comparative year, in the manner hereinafter provided, an amount equal to the Percentage of the excess of the Expenses for such comparative year over the Expense Base Factor (such amount being hereinafter called the "Expense Payment").

Following the expiration of each comparative year, Landlord shall submit to Tenant a statement, certified by Landlord, setting forth the Expenses for the preceding comparative year and the Expense Payment, if any, due to Landlord from Tenant for such comparative year. Subject to Tenant's audit

48

right set forth below, the rendition of such statement to Tenant shall constitute prima facie proof of the accuracy thereof and, if such statement shows an Expense Payment due from Tenant to Landlord with respect to the preceding comparative year then (a) Tenant shall make payment of any unpaid portion thereof within ten (10) days after receipt of such statement; and (b) Tenant shall also pay to Landlord, as additional rent, within ten (10) days after receipt of such statement, an amount equal to the product obtained by multiplying the total Expense Payment for the preceding comparative year by a fraction, the denominator of which shall be 12 and the numerator of which shall be the number of months of the current comparative year which shall have elapsed prior to the first day of the month immediately following the rendition of such statement; and (c) Tenant shall also pay to Landlord, as additional rent, commencing as of the first day of the month immediately following the rendition of such statement and on the first day of each month thereafter until a new statement is rendered, 1/12th of the total Expense Payment for the preceding comparative year. The aforesaid monthly payments based on the total Expense Payment for the preceding comparative year shall be adjusted to reflect, if Landlord can reasonably so estimate, known increases in rates, for the current comparative year, applicable to the categories involved in computing Expenses, whenever such increases become known prior to or during such current comparative year. Notwithstanding the foregoing, Landlord's estimated Expenses for the current comparative year may be in an amount not to exceed 110% of the Expenses for the preceding calendar year. The payments required to be made under (b) and (c) above shall be credited toward the Expense Payment due from Tenant for the then current comparative year, subject to adjustment as and when the statement for such current comparative year is rendered by Landlord.

     2.    The statements of the Expenses furnished by Landlord shall be certified by Landlord, and shall be prepared in reasonable detail for the Landlord by a Certified Public Accountant (who may be the CPA now or then employed by Landlord for the audit of its accounts); said Certified Public Accountant may rely on Landlord's allocations and estimates wherever operating cost allocations or estimates are needed for this Article. The statements thus furnished to Tenant shall constitute a final determination as between Landlord and Tenant of the Expenses for the period represented thereby, unless disputed by Tenant as hereinafter provided. Within ninety (90) days after receipt of Landlord's statement Tenant shall have the right to examine, upon five (5) days prior written notice to Landlord, Landlord's relevant books and records on the basis of which such statements were prepared, and to make copies of relevant portions thereof. Landlord agrees to reasonably cooperate, without cost to Landlord, with Tenant in connection with Tenant's examination and to make all books and records relevant to such examination readily available for Tenant's review. If Tenant retains an

49

agent to review Landlord's books and records, the agent must be with a licensed CPA firm. Notwithstanding the foregoing, Landlord agrees that Tenant may retain a third party agent to review Landlord's books and records which is not a CPA firm, so long as the third party agent retained by Tenant shall have expertise in and familiarity with general industry practice with respect to the operation of and accounting for a first class office building and whose compensation shall in no way be contingent upon or correspond to the financial impact on Tenant resulting from the review. Tenant shall be solely responsible for all costs, expenses and fees incurred for the audit. Tenant shall then have the right to dispute any of the items on Landlord's statement provided written notice thereof is given to Landlord within thirty (30) days after Tenant has completed its examination ("Objection Notice"). If Tenant fails to give Landlord an Objection Notice within the above thirty (30) day period or fails to exercise its right to review Landlord's books and records within the ninety (90) day period described above, Tenant shall be deemed to have approved Landlord's statement of Expenses and shall be barred from raising any claims regarding the Expenses for that year. If Tenant provides Landlord with a timely Objection Notice, Landlord and Tenant shall work together in good faith to resolve any issues raised in Tenant's Objection Notice. If any dispute with respect thereto is not resolved between the parties within one hundred eighty (180) days after Tenant's Objection Notice, the same shall be determined by arbitration in accordance with Article 42. Pending the determination of such dispute, Tenant shall pay the Expenses shown on such statement. If the results of such examination or determination shows that Expenses for the calendar year are less than reported, Landlord shall provide Tenant with a credit against the next installment of minimum rent in the amount of the overpayment by Tenant. Likewise, if such examination or determination shows that Expenses for the calendar year are greater than reported, Tenant shall pay Landlord the amount of any underpayment within thirty (30) days. The records obtained by Tenant shall be treated as confidential. If the Expenses upon final determination are less than originally stated by more than 4%, Landlord shall promptly pay Tenant's reasonable audit costs.

3.      In no event shall the minimum rent under this Lease be reduced by virtue of this Article.

4.      Upon the date of any expiration or termination of this Lease (except termination because of Tenant's default) whether the same be the date hereinabove set forth for the expiration of the term or any prior or subsequent date, a proportionate share of said additional rent for the comparative year during which such expiration or termination occurs shall immediately become due and payable by Tenant to Landlord, if it was not theretofore already billed and paid within thirty (30) days after Tenant's receipt of Landlord's statement. The said proportionate share shall be based

upon the length of time that this Lease shall have been in existence during such comparative year. Landlord shall promptly cause statements of the Expenses for that comparative year to be prepared and furnished to Tenant. Landlord and Tenant shall thereupon make appropriate adjustments of amounts then owing.

5.    Landlord's and Tenant's obligation to make the adjustments referred to in subdivision (4) above shall survive any expiration or termination of this Lease.

6.    Any delay or failure of Landlord in billing any expense escalation hereinabove provided shall not constitute a waiver of or in any way impair the continuing obligation of Tenant to pay such expense escalation hereunder.

## ARTICLE 23

## Common Areas

Section 23.01.   "Common Areas" shall mean all areas, space, facilities, equipment and signs, to the extent made available for the common and joint use and benefit of Landlord, Tenant and other tenants and occupants of the Building Project and their respective employees, agents, subtenants, concessionaires, licensees, customers, and other invitees, including but not limited to the parking facilities, driveways, exterior and interior ramps, truckways, delivery facilities, truck loading areas, roads, walkways, courts, landscaped and planted areas, cafeteria and food service, fitness and health center, convenience store, all other amenities provided to tenants, their employees and visitors, as Landlord shall deem appropriate. Tenant agrees that Landlord may, at any time and from time to time, increase, reduce or change the number, type, size, location, elevation, nature and use of any of the Common Areas, relocate entrances and exits, make installations therein, move and remove the same and erect buildings anywhere in the Building Project, provided such changes do not unreasonably interfere with Tenant's use of and access to the Demised Premises.

Section 23.02.   Tenant and its officers, employees, agents, customers and invitees shall have the nonexclusive right, in common with Landlord and all others to whom Landlord has granted or may hereafter grant rights, to use the Common Areas (except only Tenant's officers and employees shall have the nonexclusive use of the fitness and health center and convenience store), subject to such rules and regulations as Landlord may from time to time impose, including the designation of specific areas in which vehicles owned or operated by Tenant, its officers, employees and agents must be parked and the prohibition of the parking of any such vehicles in any other part of the Common Areas and in the parking facilities. Landlord may cause to be towed away any such vehicles which

51