are parked in Common Areas in violation of such rules and regulations, and Tenant waives liability of Landlord to Tenant in the event that such towing is done. Tenant further agrees, after notice thereof, to abide by such rules and regulations and to use its commercially reasonable efforts to cause its officers, employees, agents, customers and invitees to conform thereto. Landlord may at any time close temporarily any Common Area to make repairs or changes therein or to effect construction, repairs or changes within the Building Project, to prevent the acquisition of public rights in such area, or to discourage unauthorized parking, and may do such other acts in and to the Common Areas as in its reasonable judgement may be desirable to improve the convenience thereof. However, Tenant shall have the use of 4 parking spaces per 1,000 then rentable square feet of the Demised Premises, provided 25 of such spaces will be reserved for Tenant and its visitors at the proximate location in front of the North Building. Tenant shall upon request promptly furnish to Landlord the license numbers of the cars operated by Tenant and its officers, directors and employees.

Section 23.03. "Common Area Costs" shall mean all sums incurred in a manner deemed by Landlord to be reasonable and appropriate and in the best interests of the Building Project in connection with the operation, maintenance and repair of the Common Areas, including but not limited to, the costs and expenses of:

(a)    Operating, repairing, maintaining, replacing, lighting (including without limitation, the cost of electricity therefor), cleaning, painting, repaving, striping of, and removing snow, ice and debris from the Common Areas; removing garbage and trash from the Building Project; installing, maintaining, repairing and replacing curbs, paving, walkways, utility systems, security systems including policing and guards, lighting systems, (including poles, bulbs and fixtures) and any Building Project signs and traffic control devices;

(b)    Interior and exterior planting, replanting and replacing of flowers, shrubbery, plants, trees and other landscaping, and all water used to irrigate flowers, shrubbery, plants, trees and other landscaping, located in or on the Common Areas;

(c)    Maintenance, repair and inspection of all machinery and equipment used in the operation and maintenance of the Common Areas and all personal property taxes and other charges incurred in connection with such equipment;

(d)    All license and permit fees and any and all parking surcharges that may result from any environmental or other laws, rules, regulations, guidelines or orders; the cost of obtaining and operating public transportation, if the same are required by any environmental or other law, rule, regulation, guideline or order; and federal, state or local governmental

air and environmental standards, and all costs and expenses incurred in connection with obtaining any of the foregoing;

(e)    Music program services and loudspeaker systems (whether rented or purchased), including the electricity therefor;

(f)    On-site personnel, including without limitation the Building Project manager, his or her staff, bookkeepers, accountants, security, traffic and maintenance people to implement the operation, maintenance and repair of the Common Areas (including without limitation, uniforms and replacements thereof, the payroll taxes and employee benefits of such personnel);

## ARTICLE 24

## ELECTRICITY

Section 24.01.

(a)    Landlord shall provide electricity to the Demised Premises on a submetering basis from the existing risers and switches on the floor.  Tenant's consumption of electricity shall be measured by independent time of day (or use) submeters furnished and installed by Landlord, at the cost of Landlord, and read by Landlord.  If Tenant shall require electricity exceeding the available service capacity, any additional risers, feeders and similar electrical equipment which may be required, including but not limited to any of such additional risers, feeders and similar electrical equipment which may be required for Tenant's supplemental air-conditioning system (hereinafter referred to), shall be installed by Landlord, at the expense of Tenant, to and for the use of Tenant in the Demised Premises during the term hereof.  Landlord represents and warrants that the available service capacity of electricity on each floor of the Demised Premises is six (6) watts per rentable square foot connected load, exclusive of HVAC, and that in addition to such six (6) watts per rentable square foot connected load, there shall be available service capacity of electricity sufficient to operate the Building HVAC system serving the Demised Premises.  Any riser(s) shall terminate at a disconnect switch to be located at a point designated by Landlord in electrical closet(s) on the floor of the Demised Premises.  Such disconnect switch shall be the sole source from which Tenant is to obtain electricity.  Such submeter shall at all times be maintained by Tenant, at its expense, unless damaged due to the negligence or willful misconduct of Landlord, its agents, employees or contractors. Tenant covenants and agrees to purchase electric power from Landlord or

Landlord's designated agent at charges, terms and rates set, from time to time, during the term of this Lease by Landlord but not more than those specified in the service classification in effect from time to time pursuant to which Landlord then purchases electric current from the Electric Service Provider or Alternate Service Provider (as said terms are hereinafter defined), as the case may be, plus a fee equal to three (3 %) percent of such charges, representing agreed upon administrative and overhead costs to Landlord. Bills therefor shall be rendered monthly or at such other times as Landlord may elect and the amount, as computed from such meter, shall be deemed to be, and be paid as, additional rent, within thirty (30) days thereafter, without any set-off or deduction. If any tax is imposed upon Landlord's receipt from the sale or resale of electric energy to Tenant by any federal, state or municipal authority, Tenant covenants and agrees that, where permitted by law, Tenant's *pro rata* share of such taxes shall be passed on to, and included in the bill of, and paid by, Tenant to Landlord.

(b) Landlord has advised Tenant that presently Con Edison ("Electric Service Provider") is the utility company selected by Landlord to provide electricity service for the Building. Notwithstanding the foregoing, if permitted by law, Landlord shall have the right at any time and from time to time during the term of this Lease to either contract for service from a different company or companies providing electricity service (each such company shall hereinafter be referred to as an "Alternate Service Provider") or continue to contract for service from the Electric Service Provider, provided if Landlord elects to contract with an Alternate Service Provider, the costs charged by such Alternate Service Provider for providing electricity service shall not be unreasonably higher than the cost charged by the Electric Service Provider .

(c) Tenant shall reasonably cooperate with Landlord, the Electric Service Provider, and any Alternate Service Provider at all times and, as reasonably necessary and provided reasonable prior notice has been given to Tenant, shall allow Landlord, Electric Service Provider, and any Alternate Service Provider reasonable access to the Building's electric lines, feeders, risers, wiring, and any other machinery within the Demised Premises.

Section 24.02. Subject to the provisions of Section 21.06, Landlord shall not be liable in any way for any loss, damage or expense that Tenant may sustain or incur by reason of or any failure, change, interruption or defect in the supply or character of electric energy furnished to the Demised Premises by reason of any requirement, act or omission of the Electric Service Provider or Alternate Service Provider (as said terms are hereinafter defined) serving the Building with electricity and no such failure, change, interruption or defect shall constitute an act of constructive eviction, in whole or in part, or entitle Tenant to any abatement of minimum rent or additional rent or relieve Tenant of its

obligations under this Lease. Tenant shall furnish and install, at its sole cost and expense, all lighting fixtures, tubes, lamps, bulbs, ballasts and outlets relating to Tenant's electrical equipment.

Section 24.03.    Tenant's connected electrical load in the Demised Premises, including lighting, shall not at any time exceed the capacity of any of the electrical conductors and equipment in or servicing the Demised Premises, such capacity being six (6) watts per rentable square foot connected load on each on each floor of the Demised Premises (exclusive of HVAC), including lighting. In order to insure that such capacity is not exceeded and to avert possible adverse effect upon the Building electric service, Tenant shall not, without Landlord's prior reasonable consent in each instance, connect any additional fixtures, appliances or equipment or make any alteration or addition to the electric system of the Demised Premises existing on the Commencement Date. Should Landlord grant such consent, all additional risers or other equipment required therefor shall be provided by Landlord and the cost thereof shall be paid by Tenant.

Section 24.04.    Landlord reserves the right to discontinue furnishing electric energy at any time, whether or not Tenant is in default under this Lease, upon not less than thirty (30) days' notice to Tenant. If Landlord exercises such right of discontinuance, this Lease shall continue in full force and effect and shall be unaffected thereby, except only that, from and after the effective date of such discontinuance, Landlord shall not be obligated to furnish electric energy to Tenant. If Landlord so elects to discontinue furnishing electric energy to Tenant, Tenant shall arrange to obtain electric energy directly from the Electric Service Provider or Alternate Service Provider. Notwithstanding the foregoing, Landlord shall not discontinue furnishing electric energy until Tenant is able to obtain such electric energy directly from said Electric Service Provider or Alternate Service Provider. Such electric energy may be furnished to Tenant by means of the then existing Building system feeders, risers and wiring to the extent that they are available, suitable and safe for such purposes. All meters and additional panel boards, feeders, risers, wiring and other conductors and equipment which may be required to obtain electric energy directly from such Electric Service Provider or Alternate Service Provider company, and which are to be located within the Demised Premises, shall be installed by Landlord at its expense if such discontinuance was voluntary, or installed by Tenant at its expense if such discontinuance was required by the Service Provider (other than by reason of non-payment) or by law. Thereafter, all of the same shall be maintained by Tenant at its expense.

55

ARTICLE 25

Broker

Landlord and Tenant covenant and represent that the sole brokers who negotiated and brought about this transaction were Colliers ABR, Inc., Cushman & Wakefield of Connecticut, Inc. and Cohen Brothers Realty Corporation and Landlord agrees to pay a commission therefor as per separate agreements. Landlord and Tenant agree to hold the other harmless against any claims for a brokerage commission arising out of a breach by the other of the representations contained in this Article.

ARTICLE 26

Subordination

Section 26.01.    This Lease is subject and subordinate to (a) the ground and underlying lease dated as of April 1, 1998 (the "Ground Lease") between the County of Westchester Industrial Development Agency, as landlord, and Landlord herein, as tenant, (b) any other ground and underlying leases hereafter affecting the Building Project or any part thereof, and (c) to all mortgages which may hereafter affect such Ground Lease or any other ground and underlying lease or the Building Project or any part thereof, and to all renewals, modifications, amendments, consolidations, replacements or extensions of any of the foregoing. This clause shall be self-operative and no further instrument of subordination shall be required. However, in confirmation of such subordination, Tenant, at any time and from time to time, shall execute promptly, and within fifteen (15) days of such request, any certificate and document that Landlord may reasonably request which reasonably evidences such subordination. Landlord, as a condition to Tenant's obligations hereunder, within thirty (30) days from the date hereof, agrees to obtain from the lessor under the Ground Lease and from The Union Labor Life Insurance Company, the holder of the existing mortgage which is a lien on the Building Project, an agreement (the "non-disturbance and attornment agreement") providing in substance that Tenant's possession of and rights in the Demised Premises and under this Lease shall remain undisturbed so long as Tenant is not in default under the provisions of this Lease, after any notice and the expiration of any applicable periods of grace, and provided Tenant agrees in said instrument to attorn to such lessor or mortgagee, as the case may be, as its landlord under this Lease upon a foreclosure under the Ground Lease or the mortgage. Concurrently with the execution of this Lease, Tenant has executed the non-disturbance and attornment agreement with respect to such lessor and mortgagee. It is further agreed that this Lease shall not be subject and subordinate to and Tenant shall not be required to attorn to any mortgages or any ground or underlying leases which may hereafter affect the Building Project, unless the holder of each such mortgage or lessor under each such lease

executes such non-disturbance and attornment agreement in the then customary form of such mortgagee or lessor.

Section 26.02.   (a)   Tenant covenants and agrees that if by reason of a default under any underlying lease (including an underlying lease through which the Landlord derives its leasehold estate in the Demised Premises), or under any mortgage encumbering the leasehold or fee estate of Landlord in the Demised Premises, such underlying lease and the leasehold or fee estate of Landlord in the premises demised hereby is terminated (whether by foreclosure or otherwise), Tenant will attorn to the then holder of the reversionary interest in such underlying lease or the then holder of such mortgage (in either case, the "Holder") encumbering the premises demised by this Lease and will recognize such Holder as Tenant's landlord under this Lease; provided, however, in the event the Holder accepts such attornment, the Holder shall not be (i) liable for any act or omission or negligence of Landlord under this Lease; (ii) subject to any counterclaim, defense or offset, not expressly provided for in this Lease and asserted with reasonable promptness which theretofore shall have accrued to Tenant against Landlord; or (iii) bound by any previous modification or amendment of this Lease or by any previous prepayment of more than one (1) month's rent, unless such modification or prepayment shall have been approved in writing by the Holder. Nothing contained in this subparagraph shall be construed to impair any other right otherwise exercisable by any such Holder. Tenant agrees to execute and deliver, at any time and from time to time, upon the request of the Landlord or the Holder any instrument which may be reasonably necessary or appropriate to evidence such attornment. Tenant further waives the provisions of any statute or rule or law now or hereafter in effect which may give or purport to give Tenant any right of election to terminate this Lease or to surrender possession of the premises demised hereby in the event any proceeding is brought by the Holder to terminate the same, and agrees that this Lease shall not be affected in any way whatsoever by any such proceeding.

(b)   Upon Tenant's receipt of a written notice from the Holder to the effect that Tenant should pay the minimum rent and additional rent thereafter due and payable under this Lease to said Holder at a place designated in such notice, Tenant shall pay such minimum rent and additional rent to said Holder at such designated place until such time as said Holder shall notify Tenant that Landlord is no longer in default under said underlying lease or such mortgage and that Tenant may resume paying all minimum rent and additional rent thereafter due and payable under this Lease to Landlord. Tenant shall have no liability to the Landlord for paying any minimum rent or additional rent to said Holder or otherwise acting in accordance with the provisions of any notice sent to it under this paragraph and shall be relieved of its obligations to pay Landlord any minimum rent or

57

additional rent under this Lease to the extent such payments are made to said Holder.

Section 26.03.    In the event of any act or omission by Landlord which would give Tenant the right to terminate this Lease or to claim a partial or total eviction, pursuant to the terms of this Lease, if any, Tenant will not exercise any such right until:

(a)    It has given written notice to cure (whether concurrently with or subsequent to any notice given to Landlord), regarding such act or omission to the Holder, whose names and addresses shall previously have been furnished to Tenant in writing, addressed to such Holder at the last addresses so furnished, and

(b)    a reasonable period of time (which reasonable period shall in no event be less than the period to which Landlord would be entitled under this Lease or otherwise, after similar notice, to effect such remedy) for remedying such act or omission shall have elapsed following such giving of notice during which such parties, or any of them, with reasonable diligence, following the giving of such notice, shall not have commenced and is or are not continuing to remedy such act or omission or to cause the same to be remedied.

Section 26.04.    If, in connection with obtaining financing for the Building Project or any part thereof, or of Landlord's interest in any ground or underlying lease, a banking, insurance or other recognized institutional lender shall request modifications in this Lease as a condition to such financing, Tenant will not withhold, delay or defer its consent thereto and its execution and delivery of such modification agreement, provided that such modifications do not (i) adversely affect the leasehold interest hereby created or Tenant's use and enjoyment of the Demised Premises, or(ii) increase the obligations of Tenant hereunder, in either case beyond a de minimis extent.

## ARTICLE 27

### Estoppel Certificate

Tenant shall at any time, and from time to time, within ten (10) days after so requested by Landlord execute, acknowledge and deliver to Landlord, a statement addressed to Landlord or its designee (a) certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), (b) stating the dates to which the minimum rent and additional rent have been paid, (c) stating whether or not there, to the actual knowledge of Tenant, exists any default by Landlord or Tenant under this Lease, and, if so, specifying each such default, and (d) such other information as may be required

by Landlord or any mortgagee, it being intended that any such statement may be relied upon by Landlord, by any mortgagee or prospective mortgagee of any mortgage affecting the Building Project or any part thereof or the leasehold estate under any ground or underlying lease affecting the Land described in Schedule C and/or Buildings and improvements thereon, or may be relied upon by the landlord under any such ground or underlying lease or a purchaser of Lessee's estate under any such ground or underlying lease or any interest therein.

## ARTICLE 28

### Waiver of Jury Trial

Landlord and Tenant hereby waive the right to trial by jury in any summary proceeding that may hereafter be instituted against either party or in any action or proceeding that may be brought by either Tenant or Landlord on matters which are connected with this Lease, or any of its provisions or Tenant's use or occupancy of the Demised Premises and Landlord's operation of the Building Project, including any claims for injury or damage, or any emergency or other statutory remedy with respect thereto.

## ARTICLE 29

### Surrender of Premises

Section 29.01.    Upon the expiration or other termination of the term of this Lease, Tenant shall quit and surrender the Demised Premises, vacant, broom clean, in good order and condition, ordinary wear and tear and damage by fire or other casualty excepted, and shall remove all its property therefrom, except as otherwise provided in this Lease. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this Lease.

Section 29.02.    In the event Tenant shall remain in possession of the Demised Premises after the expiration or other termination of the term of this Lease, such holding over shall not constitute a renewal or extension of this Lease. Landlord, may, at its option, elect to treat Tenant as one who is not removed at the end of the term, and thereupon be entitled to all of the remedies against Tenant provided by law in that situation or Landlord may elect to construe such holding over as a tenancy from month-to-month, subject to all of the terms and conditions of this Lease, except as to the duration thereof, and the minimum rent shall be due, in either of such events, (i) during the first month of such holding over, at the same monthly installment of minimum rent which would otherwise be payable for such month, (ii) during the next six (6) months of such holding over at a

monthly rental rate equal to 150% of the monthly installment of minimum rent which would otherwise be payable for such month, and (iii) during the period of any holding over thereafter at a monthly rental rate equal to two hundred (200) percent times the monthly installment of minimum rent which would otherwise be payable for such month; together with any and all additional rent. To the extent Landlord gives Tenant reasonable prior notice thereof, Tenant shall also be responsible for and hereby indemnifies Landlord against any claims made by any succeeding tenant or prospective tenant founded upon Tenant's delay in surrendering the Demised Premises to Landlord.

## ARTICLE 30

### Rules and Regulations

Section 30.01.    Tenant, its servants, employees, agents, visitors and licensees shall observe faithfully and comply with the rules and regulations set forth in Schedule "D" attached hereto and made a part hereof. Landlord shall have the right from time to time during the term of this Lease to make changes in and additions to the rules thus set forth.    All rules and regulations shall be modified and enforced in a non-discriminatory manner.

Section 30.02.    Any failure by Landlord to enforce any rules and regulations now or hereafter in effect, either against Tenant or any other tenant in the North Building, shall not constitute a waiver of any such rules and regulations.

## ARTICLE 31

### Successors and Assigns and Definitions

Section 31.01.    The covenants, conditions and agreements contained in this Lease shall bind and enure to the benefit of Landlord and Tenant and their respective distributees, legal representatives, successors and, except as otherwise provided herein, their assigns.

Section 31.02.    The term "Landlord" as used in this Lease, so far as the covenants and agreements on the part of Landlord are concerned shall be limited to mean and include only the owner or owners at the time in question of the tenant's estate under any ground or underlying lease covering the land described in Schedule C hereto annexed and/or the fee estate of Landlord in the Building Project or any part thereof. In the event of any assignment or assignments of such tenant's estate or transfer of such fee estate, Landlord herein named (and in case of any subsequent assignment or transfer, the then

assignor or transferor) shall be automatically freed and relieved from and after the date of such assignment or transfer of all personal liability as respects to performance of any of Landlord's covenants and agreements thereafter to be performed, and such assignee or transferor shall be bound by all of such covenants and agreements; it being intended that Landlord's covenants and agreements shall be binding on Landlord, its successors and assigns only during and in respect of their successive periods of such ownership.

However, in any event, the members in Landlord shall not have any personal liability or obligation by reason of any default by Landlord under any of Landlord's covenants and agreements in this Lease. In case of such default, Tenant will look only to Landlord's estate, as tenant, under such ground or underlying lease and its fee interest in the Building Project or any part thereof, to recover any loss or damage resulting therefrom; and Tenant shall have no right to nor shall Tenant assert any claim against nor have recourse to Landlord's other property or assets to recover such loss or damage.

Section 31.03.   All pronouns or any variation thereof shall be deemed to refer to masculine, feminine or neuter, singular or plural as the identity of the person or persons may require; and if Tenant shall consist of more than one (1) person, the obligations of such persons, as Tenant, under this Lease, shall be joint and several.

Section 31.04.   The definitions contained in Schedule F annexed hereto are hereby made a part of this Lease.

## ARTICLE 32

### Notices

Any notice, statement, certificate, request, approval, consent or demand required or permitted to be given under this Lease shall be in writing sent by registered or certified mail (or reputable, commercial overnight courier service) return receipt requested, addressed, as the case may be, to Landlord, at 750 Lexington Avenue, New York, New York 10022, and to Tenant prior to and after the Commencement Date at Ameriquest Mortgage Company, 1100 Town & Country Road, Suite 410, Orange, California 92868, Attn: Leasing Department, with a copy to Garrett DeFrenza Stiepel LLP, 600 Anton Boulevard, 18th Floor, Cost Mesa, California 92626, Attn: John C. Garrett, Esq., or to such other addresses as Landlord or Tenant respectively shall designate in the manner herein provided. Such notice, statement, certificate, request, approval, consent or demand shall be deemed to have been given, regardless of which of the above methods are used, on the date of delivery or refusal to accept delivery.

61

# ARTICLE 33

## No Waiver; Entire Agreement

Section 33.01.   The specific remedies to which Landlord may resort under the provisions of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Landlord may be lawfully entitled in case of any breach or threatened breach by Landlord of any of the terms, covenants and conditions of this Lease.   The failure of Landlord or Tenant to insist upon the strict performance of any of the terms, covenants and conditions of this Lease, or to exercise any right or remedy herein contained, shall not be construed as a waiver or relinquishment for the future of such term, covenant, condition, right or remedy.   A receipt by Landlord of minimum rent or additional rent with knowledge of the breach of any term, covenant or condition of this Lease shall not be deemed a waiver of such breach.  This Lease may not be changed or terminated orally but only by writing by Landlord an Tenant.  In addition to the other remedies in this Lease provided, Landlord and Tenant shall be entitled to seek to restrain by injunction, the violation or attempted or threatened violation of any of the terms, covenants and conditions of this Lease or to a decree, any court having jurisdiction in the matter, compelling performance of any such terms, covenants and conditions.

Section 33.02.   No receipt of monies by Landlord from Tenant, after any re-entry or after the cancellation or termination of this Lease in any lawful manner, shall reinstate the Lease; and after the service of notice to terminate this Lease, or after commencement of any action, proceeding or other remedy, Landlord may demand, receive and collect any monies due, and apply them of account of Tenant's obligations under this Lease but without in any respect affecting such notice, action, proceeding or remedy, except that if a money judgment is being sought in any such action or proceeding, the amount of such judgment shall be reduced by such payment.

Section 33.03.   If Tenant is in arrears in the payment of minimum rent or additional rent, Tenant waives its right, if any, to designate the items in arrears against which any payments made by Tenant are to be credited and Landlord may apply any of such payments to any such items in arrears as Landlord, in its sole discretion, shall determine, irrespective of any designation or request by Tenant as to the items against which any such payments shall be credited.

Section 33.04.   No payment by Tenant nor receipt by Landlord of a lesser amount than may be required to be paid hereunder shall be deemed to be other than on account of any such payment, nor shall any endorsement or statement on any check or any letter accompanying any check tendered as payment be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such payment due or pursue any other remedy in this Lease provided.

Section 33.05.    This Lease and the Schedules annexed hereto constitute the entire agreement between Landlord and Tenant referable to the Demised Premises, and all prior negotiations and agreements are merged herein.

Section 33.06.    If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

Section 33.07.    Landlord reserves the right to sever the ownership of or title to various sections of the Building Project and/or to place separate mortgages on said sections of the Building Project, in which case the right of Tenant and other tenants in the Building Project will be preserved by a written declaration of agreement, to be executed by Landlord and duly recorded, creating mutual, reciprocal and interdependent rights to use the parking and other Common Areas and the utilities and facilities needed for the full use and enjoyment of the Demised Premises by Tenant and other tenants or occupants in the Building Project without impairing any of the duties and obligations of Landlord to Tenant or Tenant to Landlord under this Lease.

Section 33.08.    Tenant acknowledges that Landlord will contract or has contracted with one or more providers of telecommunications services for the installation of cable, wire and related electrical, electronic or mechanical devices in the Building sufficient to provide telecommunications services to the Demised Premises, and Tenant agrees to engage such a provider, as reasonably designated by Landlord, to provide such services, unless another provider selected by Tenant and approved by Landlord agrees to provide such services to Tenant at a lower cost than the provider designated by Landlord. In such event Landlord shall have the right to cause the service provider designated by Landlord to match the cost chargeable by the provider selected by Tenant, in which event Tenant agrees to engage the provider designated by Landlord.

Section 33.09.    In the event Tenant desires to have vending machines in the Demised Premises, Tenant shall notify Landlord thereof and Tenant shall then use the contractor designated by Landlord with respect to such vending machines, provided such contractor designated by Landlord agrees to match the cost chargeable by the contractor designated by Tenant. It is agreed that the vending machines shall be only for the use by Tenant's employees.

Section 33.10.    It is understood and agreed that this Lease is submitted to Tenant on the understanding that it shall not be considered an offer and shall not bind Landlord in any way whatsoever until (i) Tenant has duly executed and delivered duplicate originals to Landlord, and (ii) Landlord has executed and delivered one of said fully executed originals to Tenant.

## ARTICLE 34

### Captions

The captions of Articles in this Lease are inserted only as a matter of convenience and for reference and they in no way define, limit or describe the scope of this Lease or the intent of any provision thereof.

## ARTICLE 35

### Inability to Perform

Tenant's obligation to pay minimum rent and additional rent and to perform all of the other terms, covenants and conditions of this Lease shall not be affected, diminished, or excused if by reason of unavoidable delays (as hereinafter defined). If Landlord or Tenant fails or is unable to supply any services or make any repairs or perform any work which under this Lease Landlord or Tenant has expressly agreed to supply, make or perform, the time for the performance or observance thereof shall be extended for the period of time as Landlord or Tenant shall have been so delayed by such unavoidable delays.

The words "unavoidable delays", as used in this Lease shall mean (a) the enactment of any law or issuance of any governmental order, rule or regulation (i) prohibiting or restricting performance of work of the character required to be performed by Landlord under this Lease, or (ii) establishing rationing or priorities in the use of materials, or (iii) restricting the use of labor, and (b) strikes, lockouts, acts of God, inability to obtain labor or materials, enemy action, civil commotion, fire, unavoidable casualty or other similar types of causes beyond the reasonable control of Landlord, other than financial inability.

## ARTICLE 36

### No Representations by Landlord

Neither Landlord nor any agent or employee of Landlord has made any representation whatsoever with respect to the Demised Premises except as expressly set forth in this Lease.

64

## ARTICLE 37

## Supplemental Air Conditioning

Tenant, at its cost, subject to the provisions of Article 5 of the Lease, may install an air cooled supplemental air conditioning system in the Demised Premises, and in connection therewith, may install in the portion of the Common Area designated by Landlord, a condenser (collectively the "System"). Tenant shall also have the right, subject to the provisions of Article 5, to install in the Common Areas, a conduit, necessary to connect the compressor to the air conditioning equipment in the Demised Premises, including any Additional Space (as hereinbefore defined) then leased by Tenant. Said System and connecting conduit shall be installed and maintained in a manner not to unreasonably disturb any of the tenants in the Building Project, the operation of the systems in the North Building in compliance with all applicable Governmental Requirements, and shall be subject to plans and specifications to be approved by Landlord not to be unreasonably withheld or delayed. Tenant shall cause the condenser and connecting conduit to be covered under its liability insurance policy. Tenant, at its own cost, shall obtain in its own name the use permits, if any, for such System and provide Landlord with copies of same. Tenant, shall also obtain and pay for all required annual renewal fees in connection therewith, and provide Landlord with a copy of such annual renewals. Tenant shall indemnify and hold Landlord harmless from and against any loss, claims, costs and expenses (including reasonable attorneys' fees) in connection with the operation, repair and maintenance of said System and connecting conduit.

## ARTICLE 38

## Rent Control

In the event the minimum rent and/or additional rent or any part thereof provided to be paid by Tenant under the provisions of this Lease during the demised term shall become uncollectible or shall be reduced or required to be reduced or refunded by virtue of any federal, state, county or city law, order or regulation, or by any direction of a public officer or body pursuant to law, or the orders, rules, code or regulations of any organization or entity formed pursuant to law, Tenant shall enter into such agreement(s) and take such other steps (without additional expense or liability to Tenant) as Landlord may reasonably request and as may be legally permissible to permit Landlord to collect the maximum rents which from time to time during the continuance of such legal rent restriction may be legally permissible (and not in excess of the amounts reserved therefor under this Lease). Upon the termination of such legal rent restriction, (a) the minimum rent and/or additional rent shall become and thereafter be payable in accordance with the amounts reserved herein for the periods following such termination, and (b) Tenant shall pay to

Landlord promptly upon being billed, to the maximum extent legally permissible, an amount equal to (i) minimum rent and/or additional rent which would have been paid pursuant to this Lease but for such legal rent restriction less (ii) the rents paid by Tenant during the period such legal rent restriction was in effect.

## ARTICLE 39

### Landlord's Contribution

Section 39.01.    Subject to the provisions of Article 5 of this Lease, except for Landlord's Base Building Work set forth in Schedule B, Tenant agrees to perform the initial work and installations required to make the Demised Premises suitable for the conduct of Tenant's business. Landlord and Tenant acknowledge and agree that Tenant shall construct the initial work concurrently with the Base Building Work. Subject to the provisions of paragraph 5 of Schedule "B", both parties agree to coordinate and reasonably cooperate with each other to minimize interference with the other's construction obligations being completed at the earliest possible date. Tenant, at its expense, agrees to deliver to Landlord, for Landlord's approval, the plans and specifications for Tenant's initial work within thirty (30) days from the date hereof. If, for any reason whatsoever, Tenant fails to deliver its plans and specifications within such thirty (30) day period, then the Commencement Date shall be accelerated one (1) day for each day thereafter until the date said plans and specifications have been delivered to Landlord. Landlord shall approve or disapprove (together with an explanation, in reasonable detail, for the basis of Landlord's disapproval) Tenant's plans and specifications within seven (7) days after receipt of Tenant's plans and specifications; if Landlord fails to so approve or disapprove Tenant's plans and specifications within such seven (7) day period, Landlord shall be deemed to have approved such plans and specifications. If Landlord disapproves such plans and specifications within the above seven (7) day period, Tenant shall revise the plans and specifications and re-submit them to Landlord for its approval which shall be given in the same manner as described in the immediately preceding sentence, except that the seven (7) day period shall be reduced to five (5) days. The above process shall continue until Landlord has or is deemed to have approved Tenant's plans and specifications. Tenant agrees to commence its work promptly after Landlord's approval of Tenant's plans and thereafter complete its work and commence business in the Demised Premises within one hundred twenty (120) days following Landlord's approval of Tenant's plans, subject to Article 35 and any delays caused by unreasonable interference of Landlord. Landlord agrees to initially contribute up to the sum of $3,245,000.00 ("Landlord's Initial Contribution") towards reimbursement of the cost of such work, which shall include hard costs and soft costs for architectural, electrical, cabling and furniture not exceeding $649,000.00. Landlord shall pay to Tenant, from time to time, but not more often than once a month, ninety (90%) percent of the cost of the work requested by Tenant theretofore performed by the contractor, which shall include any general contractor and all subcontractors hired by the general contractor, provided Tenant delivers to Landlord concurrently with its request, bills of the contractor which have been paid by Tenant,

66

including any general contractor and subcontractor, involved and approved by Tenant, a certificate by Tenant's architect that such bills have been approved and the work or materials evidenced by such bills have been satisfactorily performed or delivered and a waiver of mechanic's lien signed by the contractor, including any general contractor and subcontractor, with respect to the amount paid as evidenced by the bill, such payment to be made to Tenant within twenty (20) days after receipt of Tenant's request together with the aforesaid documentation, provided all of the same is delivered to Landlord by the 25th day of the month, and if delivered after the 25th day of the month then Landlord's payment shall be during the second month following the month in which the same were delivered. All of the aforesaid time periods for payment shall be subject to Landlord's mortgagee's inspection of Tenant's work, if required. Within ten (10) days after Landlord receives a certificate from Tenant's architect stating that all of Tenant's work performed by any contractor, general contractor or subcontractor (including the work, if any, performed by Landlord), has been substantially completed, that the same has been performed in compliance with all applicable Governmental Requirements and the approved plans and specifications and delivery to Landlord of the final "sign-off" letters and equipment use permits (as necessary) for all work performed from the applicable municipal authorities, Landlord shall pay to Tenant the aggregate of the ten (10%) percent sums retained by Landlord. Except as provided in Section 39.02, Landlord shall have no obligation or responsibility to pay any cost exceeding the amount of Landlord's Initial Contribution. If the amount Tenant expends for the cost exceeds the amount of Landlord's Initial Contribution, Tenant shall be responsible for the payment to the contractors of the excess, subject to Landlord's payment of Landlord's Remainder Contribution set forth in Section 39.02. If said amount is less than the amount of Landlord's Initial Contribution, Landlord shall not be obligated to pay such difference to Tenant.

Section 39.02.    Provided that (i) Tenant is not then in default under any of the provisions of this Lease on its part to be performed, and (ii) the cost of Tenant's initial improvements exceeds the amount of Landlord's Initial Contribution, then after Tenant has actually paid thirteen (13) monthly installments of minimum rent, Landlord agrees to additionally contribute up to the sum of $295,000.00 ("Landlord's Additional Contribution") towards reimbursement of the cost of Tenant's initial improvements within ten (10) days after the end of that thirteenth (13th) month. Landlord shall have no obligation or responsibility to pay any cost exceeding the aggregate of the amount ("Landlord's Aggregate Contribution") of Landlord's Initial Contribution and Landlord's Additional Contribution. If the amount Tenant expends for the cost exceeds the amount of Landlord's Aggregate Contribution, Tenant shall be responsible for the payment of such excess. If said amount is less than the amount of Landlord's Aggregate Contribution, Landlord shall not be obligated to pay such difference.

Section 39.03.    Tenant shall indemnify and hold Landlord harmless from and against any and all claims, costs and expenses, including but not limited to attorneys' fees, in connection with or relating to the initial work performed pursuant to this Article.

67

ARTICLE 40

Additional Space

Section 40.01.  So long as (i) the herein named Tenant and/or Argent Mortgage Company is then in occupancy of not less than 89,000 rentable square feet of the Demised Premises, (ii) this Lease is then in full force and effect and (iii) Tenant is not then in default in performing any of the conditions of this Lease on its part to be performed, both at the time of Landlord's Offer Notice (as hereinafter defined) and on the Effective Date (as hereinafter defined) for the Additional Space (as hereinafter defined), at any time during the initial term of this Lease or during the First Renewal Term or during the first three (3) years and six (6) months of the Second Renewal Term hereof, if then applicable, that Landlord receives a "Tenant Request" (as defined in and subject to the provisions of Section 40.04) or an offer to lease any unit of space of not less than 7,500 rentable square feet in either the North Building or East Building (each such unit being called the "Additional Space"), Landlord shall, within twenty (20) days after it receives such Tenant Request or offer give Tenant notice thereof (the "Offer Notice").  Such notice shall also state the rentable square feet of the Additional Space (if for less than a full floor) and Landlord's reasonable estimation of the date when such Additional Space will be available for Tenant's occupancy (the "Occupancy Date").  For the purposes of this Article 40, Landlord and Tenant stipulate and agree that the following rentable square feet shall apply, which stipulation and agreement shall be subject to and on the same terms and conditions as those expressly set forth in Article 1: for the North Building: Terrace Level 38,907 and Lower Level 11,163; for the East Building: Terrace Level 12,920, Lower Level 8,637, Ground Floor 29,757, 1st Floor 30,028 and 2nd Floor 23,064.  If the Additional Space is subject to the prior right of the then tenant thereof to renew the term thereof or of another existing tenant to lease the same (collectively, the "Prior Right"), Landlord shall include in its Offer Notice the existence of such Prior Right and the date by which the same must be exercised by the existing tenant having such Prior Right.  Concurrently with giving the Offer Notice to Tenant, Landlord shall give to the existing tenant notice to exercise its Prior Right. Landlord thereafter shall notify Tenant of the exercise or non-exercise of such Prior Right. Tenant shall have the right to exercise its option to lease any such Additional Space by giving Landlord notice of its election to do so (the "Exercise Notice"), within twenty (20) days from the date of its receipt of the Offer Notice, with TIME OF THE ESSENCE. However, if such Additional Space is subject to a Prior Right, Tenant may exercise its option by giving the Exercise Notice within twenty (20) days from the date of its receipt of notice from Landlord of the non-exercise of such Prior Right, with TIME OF ESSENCE. If Landlord does not receive the Exercise Notice within the applicable twenty (20) day period, then Landlord may lease such Additional Space to any other party upon such terms and conditions as Landlord may deem desirable.  However, if Landlord fails to enter into a lease for such Additional Space within one hundred fifty (150) days after the end of the

68

applicable twenty (20) day period set forth in the preceding sentence, then such Additional Space shall remain subject to the provisions of this Section 40.01. Notwithstanding the foregoing, Tenant's right to give an Exercise Notice during the last eighteen (18) months of the initial term or First Renewal Term, as applicable, shall be subject to and conditioned upon Tenant also exercising its Renewal Option under Article 41 for the immediately succeeding Renewal Term either prior to or concurrently with giving its Exercise Notice. Tenant shall have no right to give an Exercise Notice during the last eighteen (18) months of the Second Renewal Term.

Section 40.02.   Tenant shall take possession of the Additional Space and Landlord shall deliver possession thereof to Tenant on the later of the Occupancy Date and the actual date on which Landlord shall have delivered such Additional Space to Tenant vacant (the "Effective Date"), and from and after the Effective Date such Additional Space shall automatically be deemed added to and made part of the Demised Premises upon all of the terms, covenants and conditions as are contained in this Lease (except those which by their terms are no longer applicable), except as follows:

(a)    If the Additional Space has been previously improved, then Tenant agrees to accept possession of the Additional Space in its then "As Is" condition and Landlord shall not be required to do any work therein to prepare the same for Tenant's occupancy; provided, however, that (i) if Tenant gives its Exercise Notice for Additional Space in the North Building or East Building before the Base Building Work has been completed as required under Section 2.01 and Schedule B, then the term for that Additional Space shall not begin until that Base Building Work has been so completed, (ii) if Tenant gives its Exercise Notice for Additional Space in the North Building or East Building during the first 39 months of the initial term, and the Additional Space has not been previously improved, Landlord shall perform Base Building Work therefor as set forth in Schedule B, (iii) for Exercise Notices given after the first 39 months of the initial term, and the Additional Space has not been previously improved, Landlord shall perform Reduced Base Building Work as set forth in Schedule B-1, and (iv) if the Additional Space is other than a full floor, then Landlord, at its expense, shall construct building standard demising wall for the Additional Space and construct a building standard common corridor.

(b)    Landlord agrees to contribute to Tenant toward reimbursement of the cost of Tenant's initial improvement in any such Additional Space the proportionate amount of the sum (the "Landlord's Contribution") equal to (i) (x) if the Effective Date occurs during the first twelve (12) months following the Commencement Date, the product of $27.50 and after Tenant has actually paid twelve (12) installments of minimum rent for such Additional Space the additional product of $2.50, or (y) if such Effective Date occurs after the first twelve (12) months following the Commencement Date the product of $30.00, in any of such events times

69

the rentable square feet of the such Additional Space (ii) in the proportion that (x) the then remaining months of the initial term of this Lease bears to 78 or (y) the then remaining months of the First Renewal Term or Second Renewal Term, as the case may be, bears to 60. The Landlord's Contribution shall be payable in the manner and be subject to the provisions of Article 39 of the Lease.

(c)    If the Effective Date occurs during the first twelve (12) months following the Commencement Date, then the amount of the increase in the minimum rent set forth in Section 3.01(a) shall be equal to the product of (i) the rentable square feet of such Additional Space times (ii) $23.00 per rentable square foot and Tenant shall be entitled to an abatement of the minimum rent for a similar ten (10) month period as provided in Section 3.02. However, if the Effective Date occurs after the first twelve (12) months following the Commencement Date, then (x) the amount of the minimum rent provided in Section 3.01 (a) shall be increased by the amount equal to the fair market annual rental value ("Rental Value") of the Additional Space as of the Effective Date, and (y) Tenant shall be entitled to an abatement of the minimum rent only for such Additional Space for (i) the similar ten (10) month period set forth in Section 3.02 (the "Abatement Period") following the Effective Date subject to (ii) the reduction of the Abatement Period in the proportion that the months of the initial term of this Lease remaining after the Effective Date bears to 78. The determination of Rental Value shall take into account any material differences between the terms of this Lease and any comparison lease, including without limitation any rent concessions and the manner in which the landlord is reimbursed for operating expenses and taxes, including the applicable base year therefor. In the event the parties fail to agree on such Rental Value within thirty (30) days prior to the Effective Date, such Rental Value shall be determined by arbitration in the manner as hereinafter provided in Article 42; and the determination of such arbitration shall be conclusive and binding on the parties. If for any reason such Rental Value shall not be determined prior to the commencement of the Effective Date, Tenant, in the meantime shall pay the monthly installments of minimum rent at the rate per square foot payable for minimum rent and said additional rent immediately prior to the Effective Date. If the Rental Value shall be greater or less than the amount paid by Tenant for the Additional Space following the Effective Date, Tenant or Landlord, as applicable, forthwith after the arbitrators' decision, shall pay to the other the difference between the monthly installments actually paid and the monthly installments which should have been paid from the commencement of the Effective Date, and thereafter Tenant shall pay the monthly installments of the new minimum rent.

(d)    In Section 22.01(a), with respect to such Additional Space only, in subdivision (i) the "Tax Base Factor" shall mean the July 1 -

70

June 30 fiscal year in which the Effective Date occurs if that date is before September 1st, otherwise it shall mean the immediately following fiscal year; in subdivision (iii) the "comparative tax year" shall mean the July 1 - June 30 fiscal y ear i mmediately f ollowing t he f oregoing T ax B ase F actor; a nd i n subdivision (v) the "Percentage" shall be the percentage that the rentable square feet of such Additional Space bears to the rentable square feet of the office space in the Building Project.

(e)    In Section 22.02(a), with respect to such Additional Space only, in subdivision (i), the "Expense Base Factor" shall mean the Expenses in effect for the calendar year in which the Effective Date occurs if that date is before September 1st, otherwise it shall mean the immediately following calendar year; in subdivision (ii) the "comparative year" shall mean the calendar year following the foregoing Expense Base Factor and each subsequent calendar year; and in subdivision (iii) the "Percentage" shall mean the percentage that the rentable square feet of such Additional Space bears to the rentable square feet of the office space in the Building Project.

Section 40.03. Notwithstanding the provisions of Section 40.02, if Landlord is unable to give possession of such Additional Space on the Effective Date because of the holding-over of the tenant thereof, Landlord shall not be subject to any liability for failure to give possession on the Effective Date, but the Effective Date shall not be deemed to have occurred for any purpose whatsoever until the date that Landlord shall actually deliver possession of such Additional Space to Tenant. In any event, Landlord shall promptly commence and diligently prosecute holdover proceedings or such other legal proceedings as may be required in order to obtain prompt possession of such Additional Space as promptly thereafter as may be practical.

Section 40.04.    (a) So long as (i) the herein named Tenant is then in occupancy of not less than 89,000 rentable feet of the Demised Premises, (ii) this Lease is then in full force and effect and (iii) Tenant is not then in default in performing any of the conditions of this Lease on its part to be performed, both at the time of a Tenant Request (as hereinafter defined) and on the Request Effective Date (as hereinafter defined in this Section 40.04) for the Additional Space (as hereinbefore defined), at any time during the initial term of this Lease or during the First Renewal Term or the first three (3) years and six (6) months of the Second Renewal Term, Tenant may send a written notice (a "Tenant Request") to Landlord to lease vacant Additional Space (as defined in Section 40.01), of not less than 7,500 rentable square feet in the North Building or East Building which Tenant Request shall set forth the amount of rentable square feet required by Tenant. Landlord, within twenty (20) days after receipt of a Tenant Request, shall advise Tenant in writing (the "Response Notice") whether it has the required rentable square feet and the locations in the North or East Building for the space. Tenant, within twenty (20) days following its receipt of the Response Notice, shall send its Exercise Notice (as defined in Section 40.01) to lease the vacant Additional Space (and identifying that space, if the Response Notice contains more than one (1) unit of such space). Landlord shall then

71

deliver the vacant Additional Space to Tenant on the date (the "Request Effective Date") that is three (3) days following Landlord's receipt of the Exercise Notice. Notwithstanding the foregoing, Tenant's right to give an Exercise Notice during the last eighteen (18) months of the initial term or First Renewal Term, as applicable, shall be subject to and conditioned upon Tenant also exercising its Renewal Option under Article 41 for the immediately succeeding Renewal Term either prior to or concurrently with giving its Exercise Notice. Tenant shall have no right to give an Exercise Notice during the last eighteen (18) months of the Second Renewal Term.

(b)    The provisions of this Section 40.04 shall be subject to the provisions of subdivisions (a) and (b) of Section 40.02.

(c)    If the Request Effective Date occurs during the first twelve (12) months following the Commencement Date, then the minimum rent provided in Section 3.01(a) shall be increased by the amount equal to the product of (i) the rentable square feet of the Additional Space times (ii) $23.00 per rentable square foot subject to an abatement of the minimum rent in the same manner as provided in Section 3.02 and the Landlord's Contribution shall be payable in the same manner as provided in clause (i)(x) of Section 40.02(b). However, if the Request Effective Date occurs after the first twelve (12) months following the Commencement Date, then the amount of the minimum rent provided in Section 3.01(a) shall be increased by the amount equal to the greater of (i) $23.00 per rentable square foot or (ii) the Rental Value of the Additional Space as of the Request Effective Date. The determination of Rental Value shall take into account any material differences between the terms of this Lease and any comparison lease, including without limitation any rent concessions, length of term (except only for such determination the term shall be deemed to be 5 years), and the manner in which the landlord is reimbursed for operating expenses and taxes, including the applicable base year therefor. If the parties fail to agree on such Rental Value within thirty (30) days after the Request Effective Date, such Rental Value shall be determined by arbitration in the manner provided in article 42, subject to the provisions of subdivision (c) of Section 40.02.

(d)    The Additional Space under this Section 40.04 shall be subject to the provisions of subdivisions (d) and (e) of Section 40.02, except that the reference to the "Effective date" therein shall mean the "Request Effective Date", and further subject to Sections 40.05 and 40.06.

Section 40.05.    Following the determination of the Effective Date, the minimum rent and the escalation rents of such Additional Space, Landlord and Tenant shall execute an agreement amending this Lease to reflect the foregoing, but the provisions of this Article 40 shall be effective with respect to such Additional Space effective from and after the Effective Date whether or not such an amendment is executed.

Section 40.06.    Except as specifically amended in this Article 40, all of the terms, covenants and conditions of this Lease shall continue in full force and effect and unchanged.

72

# ARTICLE 41

## Option for Renewal Term

Section 41.01.   So long as (i) the herein named Tenant is then in occupancy of not less than 89,000 rentable square feet of the Demised Premises, (ii) this Lease is then in full force and effect and (iii) Tenant is not then in default beyond the expiration of any applicable cure period, both at the time it exercises a Renewal Option (as hereinafter defined) and at the commencement of the First Renewal Term or Second Renewal (as hereinafter defined), as the case may be,  under any of the terms, covenants and conditions hereunder on the part of Tenant to be performed, Tenant, at its option (the "Renewal Option"), shall have the right to extend the Expiration Date of this Lease for two additional periods of five (5) years each (hereinafter referred to as the "First Renewal Term" and "Second Renewal Term" respectively) provided Tenant gives Landlord notice of its exercise of its option at least fifteen (15) months but not more than eighteen  (18) months prior to the expiration of the initial term or the expiration of the First Renewal Term, as the case may be, with TIME OF THE ESSENCE.  If Landlord does not receive Tenant's exercise notice prior to the applicable  date, then Tenant shall have no further rights under this Article 41 to either the First Renewal Term or Second Renewal Term, as the case may be, and this Article shall be of no further force or effect.

Section 41.02.   The First Renewal Term and Second Renewal Term shall be upon all of the same terms, covenants and conditions as are contained in this Lease, except as follows:

(a)    Tenant shall have no further right to extend the term of this Lease following the Second Renewal Term.

(b)    Tenant shall accept the Demised Premises in its then "as is" condition and shall not be required to do any work in the Demised Premises and there shall be no rent abatement.

(c)    (i)  The minimum rent for the First Renewal Term or Second Renewal Term  shall be an amount equal to the fair market annual rental value of the Demised Premises as at the commencement of the First Renewal Term or Second Renewal Term (inclusive of the additional rent under Article 22 which, except as hereinafter provided, shall continue to be payable as provided in said Article).  ("Renewal Rental Value").  As used

73

herein, "Renewal Rental Value" shall mean the arms length fair market annual rental rate per rentable square foot under non-expansion, non-equity new and renewal leases and amendments entered into on or about the date on which the Rental Value is being determined hereunder for space comparable to the Demised Premises in the North Building and in other, similar class office buildings comparable to the North Building and Building Project (in terms of location, age, existing improvements, services provided, length of term and other such relevant factors) in the Westchester, New York marketplace. The determination of Renewal Rental Value shall take into account any material differences between the terms of this Lease and any comparison lease or amendment, such as rent abatements, length of term, construction costs and other concessions and the manner, if any, in which the landlord under any such lease is reimbursed for operating expenses and taxes, including the applicable base year. In the event the parties fail to agree on such Renewal Rental Value within three (3) months prior to the Expiration Date of the initial term or First Renewal Term, as the case may be, then such Renewal Rental Value shall be determined by arbitration in the manner as provided in Article 42, and the results of such arbitration shall be conclusive and binding on the parties.

(ii) If for any reason the Renewal Rental Value for the First Renewal Term or Second Renewal Term, as the case may be, shall not be determined prior to the commencement thereof, Tenant, in the meantime, shall pay the monthly installments of minimum rent at the then rate as provided in Section 3.01(a) including the additional rent then payable under Article 22. If the Renewal Rental Value as determined by arbitration shall be greater or less than the amount of the annual minimum rent (inclusive of additional rent under Article 22) then being payable, then within twenty (20) days after the arbitrators decision, the difference between the monthly installments for minimum rent and additional rent actually paid and the monthly installments for minimum rent and additional rent which should have been paid from the commencement of the First Renewal Term or Second Renewal Term, as the case may be, shall be determined and paid by Tenant or Landlord, as applicable, to the other and thereafter Tenant shall pay the monthly installments of minimum rent at the new rate.

74

(d)    In Section 22.01(a), in subdivision (i), the "Tax Base Factor" shall mean the real estate taxes for the calendar year in which the First Renewal Term or Second Renewal Term commences; and in subdivision (iii) the "comparative tax year" shall mean the calendar tax year following the foregoing Tax Base Factor and each subsequent real estate calendar tax year.

(e)    In Section 22.02(a), in subdivision (i), the "Expense Base Factor" shall mean the Expenses for the calendar year in which the First Renewal Term or Second Renewal Term commences; and in subdivision (ii) the "comparative year" shall mean the calendar year following the foregoing Expense Base Factor and each subsequent calendar year.

Section 41.03.    Following the determination of the minimum rent, Landlord and Tenant shall execute an agreement amending this Lease to reflect the foregoing, but the provisions of this Article 41 shall be effective from the commencement of the First Renewal Term or Second Renewal Term, as the case may be, whether or not such an amendment is executed.

## ARTICLE 42

## Arbitration

Section 42.01    The arbitration provided for in Articles 40 and 41 shall be settled in the Borough of Manhattan, City, County and State of New York, conducted to the extent consistent with this Article 42 in accordance with the rules then obtaining of the American Arbitration Association, or any successor body of similar function, governing commercial arbitration, except that the foregoing shall not be deemed or construed to require that such arbitration actually be conducted by or before the American Arbitration Association or any successor body of similar function. The arbitration shall be conducted before arbitrators selected as follows:    The party desiring arbitration shall appoint a disinterested person as arbitrator on its behalf and give notice thereof to the other party who shall, within twenty (20) days thereafter, appoint a second disinterested person as arbitrator on its behalf and give written notice thereof to the first party. The arbitrators thus appointed shall, within twenty (20) days after the date of the appointment of the second arbitrator, appoint a third disinterested person, who shall be a person licensed by the State of New York (if such license is required by law) or otherwise qualified and having the necessary expertise, including at least ten (10) year's experience, in the matter or discipline which is the primary subject or is primarily involved in such arbitration. If the

arbitrators thus appointed shall fail to appoint such third disinterested person within said twenty (20) day period, then either party may, by application to the presiding Justice of Appellate Division of the Supreme Court of the State of New York for the First Judicial Department, which application shall be made within fifteen (15) days after the end of said twenty (20) day period, seek to appoint such third disinterested person, such appointment being made not later than thirty (30) days after the date of said application. Upon such appointment, such person shall be the third arbitrator as if appointed by the original two arbitrators. The decision of the majority of the arbitrators shall be final, non-appealable, conclusive and binding on all parties and judgment upon the award may be entered in any court having jurisdiction. If a party who shall have the right pursuant to the foregoing, to appoint an arbitrator, fails or neglects to do so, then and in such event the other party shall select the arbitrator not so selected by the first party, and upon such selection, such arbitrator shall be deemed to have been selected by the first party. The expenses of arbitration shall be shared equally by Landlord and Tenant, unless this Lease expressly provides otherwise, but each party shall pay and be separately responsible for its own counsel and witness fees and disbursements, unless this Lease expressly provides otherwise. Landlord and Tenant agree to sign all documents and to do all other things reasonably necessary to submit any such matter to arbitration and further agree to, and hereby do, waive any and all rights they or either of them may at any time have to revoke their agreement hereunder to submit to arbitration and to abide by the decision rendered thereunder and agree that a judgment or order may be entered in any court of competent jurisdiction based on an arbitration award (including the granting of injunctive relief).

Section 42.02. The arbitrators shall be disinterested persons having at least ten (10) years experience in the County of Westchester in a calling connected with the dispute, and shall have the right to retain and consult experts and competent authorities skilled in the matters under arbitration, but any such consultation shall be made in the presence of both parties, with full right on their part to cross-examine such experts and authorities. The arbitrators shall render their decision and award upon the concurrence of at least two (2) of their number, not later than sixty (60) days after appointment of the third arbitrator. Their decision and award shall be in writing and counterpart copies thereof shall be delivered to each of the parties. In rendering their decision and award, the arbitrators shall have no power to modify or in any manner alter or reform any of the provisions of this Lease, and the jurisdiction of the arbitrators is limited accordingly.

ARTICLE 43

Fitness Center

Tenant and its officers and employees only shall have the nonexclusive right, in common with the other tenants and occupants of the Building Project and with

76

Landlord and all others to whom Landlord has granted or may hereafter grant rights, to use the fitness center located in the Fitness Building, subject to such rules and regulations as Landlord may from time to time impose. Tenant agrees to pay to the operator of the fitness center the then prevailing rates charged by the operator. However, no tenant in the Building Project shall be given any more favorable rates than the rates Tenant is then obligated to pay. Landlord, during the term of this Lease subject to Article 35, agrees to keep or cause to keep the fitness center operational during such days and hours as Landlord shall elect for all the office tenants at the Building Project, which as of the date hereof are Monday through Friday from 7:00 a.m. to 8:00 p.m. Landlord shall provide such facilities to Tenant during the term of this Lease and any renewal period.

## ARTICLE 44

### Cafeteria Services

Tenant and its officers, guests, invitees and employees only, and any permitted subtenant and its officers, guests and employees only, shall have the nonexclusive right, in common with the other tenants and occupants of the Building Project and with Landlord and all others to whom Landlord has granted or may hereafter grant rights, to use the cafeteria, subject to such reasonable rules and regulations as Landlord may from time to time impose. Landlord, during the term of this Lease, subject to Article 35, agrees to keep or cause to keep, the cafeteria operational during such hours and during such days as Landlord shall elect for all the office tenants at the Building Project, which as of the date hereof are Mondays through Fridays from 7:00 A.M. to 2:00 P.M., holidays excepted.

## ARTICLE 45

### Telecommunications Equipment

Tenant shall have the right to install at a location designated by Landlord, at its own cost and expense, a satellite dish (the "Dish") at no additional charge. The Dish and connecting facilities shall be installed and maintained in a manner not to unreasonably disturb, beyond a de minimis extent, the other tenants in the Building Project, in compliance with all applicable Governmental Requirements, and subject to plans and specifications showing the type of Dish and connecting facilities to be installed and its location and manner of installation, such plans to be approved by Landlord, which approval shall not be unreasonably withheld or delayed. Tenant shall cause the Dish and the connecting conduit or other facilities to be covered under Tenant's liability insurance policy. Except to the extent caused by the negligence or willful misconduct of Landlord, Tenant shall indemnify and hold Landlord harmless from and against any loss, claim, damage or expense in connection with or relating to the installation, maintenance and operation of the Dish and connecting facilities. Tenant, at its own cost, shall repair any

77

damage to the Building Project and/or Demised Premises caused by such work, and shall at all times maintain and repair the Dish and connecting conduit or other facilities, including any required replacements thereof.

## ARTICLE 46

### Signage

So long as the herein named Tenant occupies not less than 89,000 rentable square feet of the Demised Premises, Tenant, at its expense, may place a sign on the exterior of the retaining wall of the North Building facing North, at the entrance to the North Building and at the top most panel on the North Building Project directory, and may also install a monument sign, which signs shall be subject to Landlord's consent with respect to its location, size, content, material and design. However, the sign on the North Building Project directory may contain either the name Ameriquest Mortgage Company or Argent Mortgage Company, at the election of Tenant; provided the electricity, if any, required to light such sign shall be connected to Tenant's submeter for the Demised Premises. All of such signs shall be subject to the consent of the City of White Plains, and at all times be in compliance with applicable Governmental Requirements, including but not limited to, all required approvals and permits. Tenant, at its expense, shall keep such signs clean and in good condition and repair, and shall not replace any sign without Landlord's prior written consent. Tenant shall repair any damage to the North Building and Building Project caused by the installation and/or maintenance of said signs. Tenant shall keep such signs covered under its liability insurance policy and except to the extent caused by the negligence or willful misconduct of Landlord, shall indemnify and hold Landlord harmless from and against any claims, costs, damages and expenses, including reasonable attorneys' fees, in connection with such signs.

## ARTICLE 47

### Conference Center

Tenant shall have the non-exclusive right, in common with the other tenants and occupants of the Building Project and with Landlord and all others to whom Landlord has granted or may hereafter grant rights, to use the conference center in the South Building for seminars and public presentations. However, Tenant shall supply any equipment it requires for such seminars or presentations. Tenant shall give Landlord at least forty-eight (48) hours prior written notice of its desire to use the conference center, stating the day, the time of day and anticipated number of people that will attend.